EDWARDS, Judge.
Plaintiff, Mary Wales, as curator of the interdict, Pauline Maroma, brought separate actions seeking to have two judgments, which were rendered by default against Mrs. Maroma (prior to her interdiction), declared null, based on allegations that the judgments were rendered against Mrs. Maroma while she was mentally incompetent and unrepresented by an attorney. The two suits, which were consolidated for trial, seek annulments of a judgment for separation, dated May 5, 1983, and of a judgment for divorce, dated November 10, 1983. After the presentation of plaintiff’s case, the trial judge granted a judgment of involuntary dismissal, finding that the plaintiff had failed to present sufficient evidence of Mrs. Maroma’s incompetency to warrant a judgment of nullity. Mrs. Wales appeals the judgment of the trial court.
Mental Incompetency
Mrs. Wales’s actions for nullity were instituted under the authority of La.C.C.P. art. 2002(1) which provides for the nullity of a final judgment when it is rendered against an incompetent person not represented as required by law. La.C.C.P. art. 733 provides, in part, that a mental incompetent has no procedural capacity to be sued. However, our law does not expressly provide a definition of a mentally incom *52 petent person, nor does it delineate a standard for what constitutes mental incompetency.[1] It appears, therefore, that mental incompetency is a conclusion of fact based upon evidence. Neff v. Ford Motor Credit Company, 347 So.2d 1228 (La.App. 1st Cir. 1977).
The threshold issue in the resolution of this matter is whether Mrs. Maroma was mentally incompetent during the time the separation and divorce proceedings took place, from February through November of 1983.[2] The record shows that Mrs. Maro-ma was hospitalized at least four times in mental institutions prior to the separation, and that she had been diagnosed as a paranoid schizophrenic. The deposition of her treating psychiatrist, Dr. Amit Kshetarpal, was admitted into evidence. He testified that he saw Mrs. Maroma off and on during 1982 and 1983, but he was unable to provide the exact dates of her hospitalization or of her subsequent outpatient treatment.[3] He stated that when he saw Mrs. Maroma, her behavior was “pretty bizarre;” however, he admitted that she may have experienced periods of lucidity which would also be consistent with the diagnosis of paranoid schizophrenic.
Dr. Maroma admitted that his wife had been hospitalized and that he knew of her diagnosis. Although her behavior prior to each hospitalization became very erratic, he testified that in the interim, between hospitalizations, she was prescribed medication, and was able to live at home, cook meals, take care of the house and provide for their two children’s welfare in the same manner as she had prior to her illness. He further testified that toward the end of her fourth hospitalization, he talked with her in the hospital, in the presence of Dr. Kshetarpal, about his desire to obtain a legal separation. After she was discharged, he moved out of the house. Pursuant to an agreement with Mrs. Maroma, he took custody of their son, and their daughter remained at home in the custody of Mrs. Maroma. Dr. Maroma had little contact with Mrs. Maroma after the physical separation, although he did maintain contacts with their daughter. He testified that, on one occasion, he had visited the house and an argument ensued between Mrs. Maroma and himself. As he was leaving, Mrs. Maroma said to him, “I’ll see you in court.” He testified that it was his understanding that she was aware of their separation and of the fact that legal proceedings were being instituted for a divorce. In fact, on August 17,1983, she met with him and his attorney and executed a community property settlement.
The testimony of Mrs. Wales was also elicited at trial. She testified that in 1984 she received a telephone call from Dr. Ma-roma who informed her that he and Mrs. Maroma had been divorced and that he thought someone in her family should come and look after her. Mrs. Wales admitted that, prior to that phone call, she had not had any contact with her sister, Mrs. Maro-ma, between the period of 1980 and 1984; therefore, she was unable to provide any information regarding Mrs. Maroma’s mental state during the time of the separation and divorce proceedings.
Finally, the plaintiff called Mrs. Maroma to the stand. Although she had been inter- *53 dieted,[4] counsel for the plaintiff explained: “It is our appreciation of the law that that goes to the weight ... [o]bviously counsel feels that she has no capacity to testify whatsoever.” Nevertheless, Mrs. Maroma was tendered as a witness and her competency was tested. After questioning by both sides, the trial court independently questioned Mrs. Maroma and ruled that she was competent to testify at the trial. Mrs. Maroma’s testimony revealed that she was aware of the purpose of the present action. Furthermore, she candidly admitted that she had been aware of a pending divorce proceeding between Dr. Maroma and herself; she recalled having been served with divorce papers by a deputy, stating that she had looked at the papers and noted the dates, but then later forgot that she was supposed to go to court. She was also aware that her son had gone to live with Dr. Maroma and her daughter had stayed to live with her. She stated that during that time, her daughter had attended high school and had done very well. She also recalled that she had gone to the office of Dr. Maroma’s attorney and had signed a community property settlement.
Involuntary Dismissal
After the close of plaintiff’s evidence, counsel for Dr. Maroma moved for a judgment of involuntary dismissal. The appropriate standard for the trial court’s determination of a motion for involuntary dismissal is whether the plaintiff has presented sufficient evidence in his case-in-chief to establish his claim by a preponderance of the evidence, without any inferences in favor of the opponent of the motion. The trial court’s determination will not be disturbed in the absence of manifest error. Silvio v. Pharoah’s Palace, 517 So.2d 185, 187 (La.App. 1st Cir.1987).
We have thoroughly reviewed the record and find that, undeniably, Mrs. Maroma suffered from mental illness as early as 1982 and continuing through the date of this trial. Nevertheless, the record is devoid of any evidence showing the exact dates of her illness or the proximity of the hospitalizations to the time of the proceedings in question. The record also contains evidence that there were interim periods during which Mrs. Maroma was able to care for her children, keep up the house and understand what was going on around her. Significantly, she was found by the trial court to be competent at the time her testimony was elicited for trial. A review of this testimony convinces us that the trial court was correct in this assessment. Furthermore, we agree with the trial court that there is no evidence in the record to establish Mrs. Maroma’s mental state during the critical time period: February through November, 1983, when the separation and divorce proceedings occurred. Only Mrs. Maroma testified as to her mental state during this time, and her testimony reflects that she was aware of those proceedings. We are constrained to agree that there was insufficient evidence in the plaintiff’s case-in-chief to establish, by a preponderance of the evidence, that Mrs. Maroma was mentally incompetent at the time of the separation and divorce. Accordingly, the judgment of the trial court is affirmed; plaintiff is assessed with the costs of this appeal.
AFFIRMED.

. Former La.C.C. art. 31 defined "[pjersons of insane mind” as "those who do not enjoy the exercise and use of reason, after they have arrived at the age at which they ought, according to nature, to possess it, whether the defect results from nature or accident.” Former C.C. art. 31 was vacated by the amendment and reenactment of Title I of Book I of the 1870 Civil Code by Acts 1987, No. 125 § 1, effective January 1, 1988.

. The suit for separation was filed on February 14, 1983, and Mrs. Maroma was served with the petition and citation on February 24, 1983. Judgment was rendered on confirmation of default on March 30, 1983 and signed on May 5, 1983. The petition for divorce was filed on October 7, 1983, and Mrs. Maroma was served with the petition and citation on October 14, 1983. The judgment of divorce was rendered and signed on confirmation of default on November 10, 1983.

.Dr. Kshetarpal testified that he had moved offices several times and that his records for 1982 and 1983 had either been lost or misplaced.

. The record reflects that a petition for the interdiction of Mrs. Maroma was filed by Mrs. Wales on June 15, 1984 and a judgment pronouncing Mrs. Maroma’s interdiction was rendered on July 8, 1985.