860 So.2d 104 (2003)
Jonathan B. AINSWORTH
v.
Harold R. AINSWORTH, Jr. & Richard C. Ainsworth.
No. 2003-C-1626.
Court of Appeal of Louisiana, Fourth Circuit.
October 22, 2003.
Writ Denied January 9, 2004.
*107 Jonathan B. Ainsworth, New Orleans, LA, In Proper Person, Relator.
Claude A. Schlesinger, Sidney L. Shushan, Guste, Barnett & Shushan, L.L.P., New Orleans, LA, for Respondents.
(Court composed of Chief Judge WILLIAM H. BYRNES, III, Judge JOAN BERNARD ARMSTRONG, and Judge TERRI F. LOVE).
WILLIAM H. BYRNES, III, Chief Judge.
The relator, Jonathan B. Ainsworth, requests expedited consideration of his writ application to enjoin the civil sheriff's sale of property. The relator's request to proceed in forma pauperis is denied. His request for a stay order is denied. Although his request for expedited review is granted, relief is denied. We affirm the trial court's judgments.
The relator and his two brothers, Harold R. Ainsworth, Jr., and Richard C. Ainsworth, each inherited as co-owners, equal interest in the property, 7500 General Haig, New Orleans, as part of their father's succession. Harold and Richard Ainsworth filed a petition for partition of the property, and Jonathan Ainsworth contested the partition and sale. On July 21, 2003, the trial court entered three judgments, including the ordering of the partition of the property at the civil sheriff's sale, ordering the reimbursement to Richard Ainsworth for taxes paid, and changing the relator's pauper status.
Jonathan Ainsworth contends that: (1) he was not properly served with the citation and summons; (2) he was not advised or served with the date of the June 27, 2003 hearing; and (3) he was not sent a notice of signing the July 21, 2003 judgment until September 10, 2003.
Further, Jonathan Ainsworth argues that: (4) the trial court erred in not appointing a curator and attorney to represent his brother, Harold, based on the relator's claim that Harold is mentally incompetent and has interests that conflict with that of his brother Richard; and (5) the trial court did not review the relator's *108 motion for recusal of the trial judge. The relator also asks that: (6) he may proceed in forma pauperis on appeal because he has a bad back, is totally disabled, and receives government disability payments. The relator also claims that: (7) the minimum bid for the sale of the property is too low. The relator asks that this Court restrain, prohibit or enjoin the Orleans Parish Sheriff's Office from selling the property.

In Forma Pauperis
The relator Jonathan Ainsworth asserts that he should be allowed to proceed in forma pauperis to pursue a review of his claims because he is indigent.
The trial court is afforded wide discretion in determining whether to grant the privilege to litigate in forma pauperis. La. C.C.P. art. 5181; Starks v. Universal Life Ins. Co., 95-1003 (La.App. 1 Cir. 12/15/95), 666 So.2d 387; Armont v. Board of Com'rs of Gramercy Recreation Dist., 358 So.2d 358 (La.App. 4 Cir.1978). Such discretion must be exercised reasonably and is subject to review for abuse. McCoy v. Winn-Dixie Louisiana, Inc., 339 So.2d 976 (La.App. 4 Cir.1976), reversed on other grounds, 345 So.2d 1175 (La.1977).
Although Jonathan Ainsworth initially was allowed to proceed in former pauperis in the trial court, by judgment of July 21, 2003, the trial court granted Harold and Richard Ainsworth's motion to revoke Jonathan's pauper status.
In addition to his disability payments, the relator resides on the property at issue without paying rent. Relator is a co-owner of the property. Although the relator asserts that he does not have the inheritance yet, his deceased aunt also left him a $1,000 legacy, as well as an additional legacy of $50,000. Respondents noted that: "However, [the relator] is challenging the legitimacy of the will, alleging that his deceased aunt had made a verbal commitment to leave her entire estate to himself and his fiance'...."
In making his claims, the relator omitted some facts and embellished others. His assertions are misleading. For example, the relator did not mention that the trial court revoked his pauper status although he included a copy of that judgment. The relator states that he "may receive a $50,000 bequest from his late aunt's estate; however, there is a will contest currently pending and [he] cannot say when or if he will ever see or receive an inheritance with any degree of certainty." The relator did not mention that he is contesting the will based on the claim that his aunt left him even more than the $50,000 bequest, i.e. her entire estate. The relator does not show that any parties claim that the $50,000 bequest to him is invalid.
The relator also will receive one-third of the proceeds from the judicial sale of the property bequeathed by his father.
Further, the relator did not provide an affidavit of a person supporting the mover's pauper status as required by La. C.C.P. art. 5183(2).
The relator's portion of the inheritances is delayed by his challenge to his aunt's will, as well as his challenge to the partition of his father's property at issue. The record shows that the relator filed various pleadings with claims that are needlessly repetitive. The relator should not be entitled to abuse the system by continuing to file extensive pleadings that result in needless delay. We infer that the most likely reason for this delay is for the relator to continue to live on the property rent-free.
The relator did not give sufficient evidence to show that he is destitute to a degree that would qualify him to proceed in forma pauperis. The trial court did not *109 abuse its discretion in determining that the relator is not entitled to pauper status. Jonathan Ainsworth's application to proceed in forma pauperis in this Court is denied.

Partition
Partitions can be either nonjudicial or judicial, but must be judicial when the parties cannot agree upon a nonjudicial partition. La. C.C. art. 809; La. C.C.P. arts. 4601, 4602;[1]Welch v. Zucco, 27,634 (La.App. 2 Cir.12/6/95), 665 So.2d 697. Limitations on the right to partition are to be strictly construed. Campbell v. Pasternack Holding Co., Inc., 625 So.2d 477 (La. 1993).
It must be shown that an agreement by the parties not to partition is definite and certain. Walker v. Chapital, 218 La. 663, 50 So.2d 641 (1951). In Giardina v. Giardina, 181 La. 42, 158 So. 615 (1935), the Louisiana Supreme Court rejected an agreement between co-heirs of realty to postpone a partition until the realty values improved and a fair price could be obtained. The Supreme Court held that the agreement was unenforceable for indefiniteness.
In the present case, the relator failed to show that the parties continue to agree to a private sale or nonjudicial partition. The respondents asserted that the parties could not agree to a private sale after the attempted sale of the property by a real estate agent. When the nature of the property is such that it cannot be conveniently divided in kind, it is not necessary to produce additional evidence in order for the property to be partitioned by licitation. Bulliard v. Bienvenu, 95-297 (La.App. 3 Cir.10/4/95), 663 So.2d 373. The nature of the property at issue in the present case is not susceptible to partition in kind but must be ordered by judicial partition by licitation.
In Walker v. Chapital, supra, the Louisiana Supreme Court held that the statutory right, that is granted to anyone who holds property with another to demand the division of the thing held in common by an action of partition, is absolute. Once the interest of the parties in the property has been admitted, the action is not subject to any defense. Id. See also Grouchy v. Williams, 161 La. 909, 109 So. 545 (1926).
In the present case, ultimately, even if the relator succeeds in delaying the partition and sale of the property, even if Harold were interdicted, the relator cannot prevent the partition because any co-owner has the right to demand a partition of the property. Co-owners cannot be compelled to own property in indivision. La. C.C. art. 807.[2]
*110 In Succession of Riehlman, (1907) 4 Orleans App. 400, the rights of the heir, whose death was presumed, was not lost to him if he reappeared, but his action is against his co-heirs and not against the purchasers at the partition sale; the title to the property so acquired by the purchasers is above attack in that regard.
The relator has no valid claim against the partition of the property. He cannot prevent the partition.

Notice
Jonathan Ainsworth argues that he did not receive proper service of the hearing.
Proper citation is the cornerstone of all actions and actual knowledge cannot supplant the need for strict compliance with the requisites of proper citation. Rivers v. Groth Corp., 95-2509 (La.App. 1 Cir.9/27/96), 680 So.2d 762. The return of service is prima facie evidence of proper service. La. C.C.P. art. 1292; Billiot Bros., Inc. v. Bercier, 447 So.2d 1090 (La. App. 1 Cir.1983). For purposes of determining whether proper service was made, the return of the officer on the citation is given great weight, and the burden rests on the party attacking it to establish otherwise by clear and convincing evidence. Blue, Williams & Buckley v. Brian Investments, Ltd., 96-1451 (La.App. 1 Cir. 6/20/97), 706 So.2d 999. A single witness' uncorroborated testimony regarding improper service of process is insufficient to overcome the presumption of correctness afforded to a sheriff's return of service. Smith v. Moore, 539 So.2d 888 (La.App. 4 Cir.1989).
In the present case, the respondents provided a copy of the Orleans Parish Sheriff's return, which shows that the sheriff personally served the relator with the original petition on June 18, 2002. Further, Jonathan Ainsworth filed an answer to the petition for partition, as well as a reconventional demand signed on June 19, 2002. The relator's answer and reconventional demand constitute a general appearance, and the relator submitted himself to the jurisdiction of the trial court. La. C.C.P. arts. 6, 925, and 928.
Subsequent pleadings can be legally served by regular mail. La. C.C.P. art. 1313.[3] However, if a pleading requires an *111 appearance or answer, service by mail is not authorized, and the sheriff's service is required. La. C.C.P. arts. 2591-2594, 1201;[4]Barrios v. Barrios, 95-1390 (La. *112 App. 1 Cir.2/23/96), 694 So.2d 290; Johnson v. Johnson, 94-0018 (La.App. 1 Cir. 11/10/94), 645 So.2d 1260.
In In re Medical Review Panel for Claim of Brunet, 578 So.2d 1011 (La.App. 4 Cir.1991), this Court held that the judgment dismissing the petition in a medical malpractice action was an absolute nullity, where the plaintiff did not receive notice of the hearing and did not appear at the hearing or file an opposition.
In the present case, the respondents filed motions and exceptions, including a motion for summary judgment. A motion for summary judgment is a pleading that requires an answer and proper service by the sheriff. Strickland v. Board of Sup'rs of Louisiana State University and Agr. And Mechanical College, 432 So.2d 964 (La.App. 4 Cir.1983). A motion for summary judgment in the form of a rule to show cause requires service by the sheriff. Bergeron v. Hymel, 98-737 (La.App. 5 Cir.1/26/99), 726 So.2d 482. In Pyle v. Pyle, 2000-55 (La.App. 3 Cir.6/28/00), 769 So.2d 626, the Third Circuit found that the failure to receive notice of trial did not come within the purview of any of the grounds for annulment of judgment for vices of form.
In Jones v. Decuers, 320 So.2d 348 (La. App. 4 Cir.1975), the appellate court found that where service of a creditor's attorney's motion to withdraw and the creditor's motion to substitute counsel and one other ex parte motion could not have prevented a default judgment from being rendered, the failure of the creditor to serve the judgment debtor with the three ex parte motions was not considered to be "vices of form" under La. C.C.P. art. 2002[5] or "ill practice" under La. C.C.P. art.2004,[6] resulting in an inequitable situation that would require the annulment of the default judgment. This Court stated:
A motion to substitute counsel is a pleading which requires service upon an adverse party under LSA-C.C.P. Art. 1312. See LSA-C.C.P. Book II, Tit. 1, Chapter 4, Preliminary Statement; 28 La.L.R. 552. Nevertheless, we conclude that this failure to serve does not constitute grounds for nullity under LSA-C.C.P. Art.2002. Comment d to C.C.P. Art.2002 indicates that Subsection 2 only applies when there has been a total lack of citation of the original petition or when citation is defective. Here, defendant *113 has admitted that he was personally served with process in the original action and the record indicates he also made an appearance in a rule to traverse. Accordingly, the judgment cannot now be nullified for "vices of form." [Emphasis added.]
Id., 320 So.2d at 350.
In the present case, considering that the relator was personally served with the original petition, and the relator made an appearance, the partition judgment cannot now be nullified for "vices of form" under La. C.C.P. art.2002.
The party seeking an annulment of a final judgment based on fraud or ill practices must show both that the challenged judgment resulted from a deprivation of a legal right and that its enforcement would be unconscionable and inequitable. Guidry v. First Nat. Bank of Commerce, 98-2383 (La.App. 4 Cir. 3/1/00), 755 So.2d 1033.
In Jones v. Decuers, supra, 320 So.2d at 350, this Court further stated:
The failure of the defendant to be served with the motions also does not constitute an [i]ll practice which would annul the judgment for [v]ices of substance under LSA-C.C.P. Art.2004. LSA-C.C.P. Art.2004[A] provides:
A final judgment obtained by fraud or ill practices may be annulled.
To come within this article and have a default judgment nullified, one must demonstrate how he was prevented or excused from asserting his defenses. Pryor v. Gions, 188 So.2d 739 (La.App. 2 Cir.1968[1966]). Defendant has not shown, since he was represented by counsel, how failure to be notified of the changes of plaintiff's counsel prevented him from filing an answer. Defendant had six years to act. He did nothing. Any improper procedure which enables a party to obtain a final judgment is subject to an action for nullity under LSA-C.C.P. Art.2004. However, in Alonso v. Bowers, 222 La. 1093, 64 So.2d 443, 444 (1953) it is stated:
* * * The courts have looked at each case from a purely equitable viewpoint to ascertain whether allowing the judgment to stand would be inequitable or unconscionable in view of the practice or procedure which enabled the party to obtain such judgment. * * *
We find that the failure to serve the three ex parte motions did not in any way result in an inequitable situation. We cannot see how service of these motions could have prevented a default judgment from being rendered and, accordingly, the judgment will not be annulled for [i]ll practices. [Emphasis added.]
In Demery v. Nelken, 385 So.2d 531, 532-533 (La.App. 3 Cir.1980), the Third Circuit stated:
The plaintiffs argue that the partition judgment was obtained as a result of "ill practices" on the part of Mr. Nelken and Mr. Gahagan in failing to notify them of the partition suit, failing to conduct the proceedings contradictorily and failing to comply with other duties provided for an attorney appointed to represent an absentee by Articles 5091 through 5096 of our Code of Civil Procedure. Their position in this respect is that the requirements of these articles constitute matters of substance which must be complied with or else the legal proceeding is an absolute nullity, as distinguished from mere informalities or defects which are only relative nullities cured by the prescriptions of Articles 3542 and 3543 of our Civil Code.
We do not agree.
*114 In the first place the record does not reveal that either Mr. Nelken or Mr. Gahagan committed any ill practice under Article 2004. According to the Official Revision Comment:
(b): * * *
Although the courts do not sanction negligence or laches, they have not hesitated "to afford relief against judgments irrespective of any issue of inattention or neglect, when the circumstances under which the judgment is rendered show the deprivation of the legal rights of the litigant who seeks relief, and when the enforcement of the judgment would be unconscientious and inequitable." (Emphasis added.)
The plaintiffs have not shown that either attorney knew of any better addresses for the Demery heirs than those used in the curator's November 7, 1973, letter or that they did not exercise reasonable diligence to communicate with the defendants in the partition suit and inform them of its pendency. To the contrary, the evidence indicates that most if not all of the heirs received such a notice.
In addition, there is no indication that the Demery heirs were deprived of any legal rights. LSA-C.C.P. Article 4621 provides:
When one of the co-owners of property sought to be partitioned is an absentee, the partition may be effected by licitation, as provided in this Chapter, whether the property is divisible in kind or not.
The petition contains no allegation that the plaintiffs had any defense to the partition suit of which they were deprived or that the price bid for the property at the sale was inadequate.
Although the code provides for a contradictory proceeding against the attorney for an absent heir, in our opinion he is not absolutely required thereby to contest the suit or interpose any defense unless he is aware of same.
Furthermore, LSA-C.C.P. Article 5098 specifically provides:
The failure of an attorney appointed by the court to represent an unrepresented party to perform any duty imposed upon him by, or the violation by any person of, the provisions of Articles 5092 through 5096 shall not affect the validity of any proceeding, trial, order, judgment, seizure, or judicial sale of any property in the action or proceeding, or in connection therewith. [Emphasis added.]
In the present case, the respondents assert that the relator, respondents, and respondents' counsel attended a hearing on December 6, 2002. The trial court reset the matter until January 10, 2003, in open court with the relator present. The relator did not appear on January 10, 2003, and the civil sheriff was unable to make service on the relator. The matter was continued until February 21, 2003. On January 27, 2003, the trial court granted the respondents' motion and order to appoint private process server after the civil sheriff's attempts to serve the relator were in vain. The relator does not contest these facts.
The respondents note that on February 21, 2003, the matter was taken off the docket because the private process server was unable to obtain service "[d]espite numerous efforts." After various futile attempts at service, the matter was continued until April 11, 2003, and then to June 27, 2003. After a hearing on that date, the trial court denied the relator's exceptions and motion for summary judgment. The relator does not dispute these facts.
*115 The respondents assert that initially the first continuance notice of the next date was properly served. The respondents' attorney provided an affidavit of service filed on June 27, 2003, as well as a copy of the registered receipt for the total of $12.38, which were filed in the trial court. The attorney signed a notarized affidavit, stating that he sent Jonathan Ainsworth a copy of motions and orders to reset the hearing date by registered mail, return receipt requested, as well as by regular mail; however, the mailings were not claimed by the relator. A litigant may not defeat service by merely refusing to accept a letter containing a citation. Amin v. Bakhaty, 2000-2710 (La.App. 1 Cir.5/11/01), 812 So.2d 12; Ahlers v. Ahlers, 384 So.2d 474 (La.App. 2 Cir.1980); McFarland v. Dippel, 99-0584 (La.App. 1 Cir.3/31/00), 756 So.2d 618, 622.
In the present case, the hearing was continued several times in an attempt for the relator to receive notice. It was evident that the relator avoided being served and avoided receiving notice of the hearing date. It is in his best interest to delay the proceedings so that he can live on the property rent-free.
As previously discussed, a co-owner cannot defeat a partition of the property when one of the co-owners requests a partition. We find that the failure to serve notice of the continuances did not in any way result in an inequitable situation. We cannot see how service of these notice of continuances could have prevented a judgment for partition of the property from being rendered and, accordingly, the judgment will not be annulled for ill practices under La. C.C.P. art. 2004.
Jonathan Ainsworth also asserts that he was not mailed a copy of the judgments until September 10, 2003. Although the relator was not mailed a copy of the judgments when rendered, the relator states that the trial court sent him copies of the judgments on September 10, 2003. The respondents do not contend that the period for the relator's timely appeal has passed, and the relator was not prejudiced. The relator was not denied his right to due process.
Considering that the relator avoided receiving notice, we cannot say that the relator has a justifiable claim of improper service in the present case where he cannot prevent the partition of the property based on the claims asserted in this writ application.

Appointment of Representatives on behalf of Harold Ainsworth Where Co-owners have Conflicting Interests
Jonathan Ainsworth avers that the trial court erred in not finding that his brother Harold Ainsworth is mentally incompetent so that, under La. C.C.P. art. 4643,[7] a curator and/or attorney should have been appointed to represent Harold at the June 27, 2003 hearing.
*116 "The petitioner in an interdiction proceeding shall prove by clear and convincing evidence of the facts justifying interdiction." La. C.C.P. art. 4548. In Wales v. Maroma, 589 So.2d 51 (La.App. 1 Cir.1991), the First Circuit held that the curator of the interdict failed to present sufficient evidence that the interdict was mentally incompetent at the time of the separation and divorce to warrant the annulment of judgments. Although the interdict suffered from mental illness, where there was no evidence showing the exact dates of her illness or proximity of her hospitalization to the time of the proceedings in question, the evidence was inadequate.
In the present case, the relator maintains that his brother Richard Ainsworth tried to have Harold committed to a mental institution, which fact was admitted by Harold and Richard in the requests for admission.
On August 5, 2002, Jonathan Ainsworth signed a declaration (without being notarized) that was filed in civil district court. In his declaration, Jonathan Ainsworth included his account of a background of the family history and the problems that occurred. With reference to his brother Harold, the relator stated in part:
My brother, Richard, believes that our brother, Harold, is non compis mentis. Richard once attempted to have[]Harold Commited [sic] to a mental institution! I intervened and prevented it. Harold was a recluse, confined to bed and let his toenails grow.... Harold, Jr. is a diabetic and I have personally taken him to the Emergency Room of Baptist Hospital on several occasions. Last year he was admitted twice, for several months duration, due to diabetes[]and congestive heart failure....
The relator did not show that Harold was committed to an institution or has been interdicted. In fact, Jonathan declared that he intervened and prevented Harold from being committed.
The relator failed to provide sufficient evidence to show that Harold was mentally incompetent at the time that the judgments were rendered. The trial court did not err in not appointing a curator for Harold.
Jonathan Ainsworth also contends that the same attorney should not represent Richard and Harold because they have conflicting interests. Jonathan complains that Richard is influencing Harold's decisions.
The three brothers equally own the property. La. C.C. art. 797.[8] Jonathan's concern for Harold's interest is suspect where Jonathan does not dispute that he is living on the property rent-free. Co-owners cannot be compelled to pay rent. La. C.C. art. 802;[9]Pelafigue v. Sudduth, 95-1305 (La.App. 3 Cir.12/7/95), 666 So.2d 1135, appeal after remand, 2001-807 (La. App. 3 Cir.5/15/02), 820 So.2d 583, writ denied, 2002-2157 (La.11/8/02), 828 So.2d 1124. A co-owner need not pay rent to *117 another co-owner for his exclusive use of the co-owned property. McCarroll v. McCarroll, 96-2700 (La.10/21/97), 701 So.2d 1280, on remand 99-0046 (La.App. 1 Cir.5/12/00), 767 So.2d 715, writ denied, 2000-2370 (La.11/3/00), 773 So.2d 146. It is not in Harold's best interest for Jonathan to continue to live on the property rent-free. It is in both Harold and Richard's interest to have the property partitioned.
The relator did not show that Harold and Richard have conflicting interests. The trial court did not err in failing to appoint an independent attorney to represent Harold at the hearing.

Minimum Bid
Jonathan Ainsworth maintains that the minimum bid of $270,000 set for the sheriff's sale of the property is too low as the property was appraised for $400,000.
The relator did not cite any authority in support of his contention that the minimum bid is too low, and this Court uncovered no such authority. In fact, there is no requirement that there be a minimum bid at all in a partition by licitation. La. C.C. art. 811.[10]
Only an extrajudicial partition may be rescinded on grounds of lesion under the partition article, La. C.C. art. 814,[11] and under the lesion article, La. C.C. art. 2589.[12] Pursuant to the third sentence of La. C.C. art. 2589, lesion cannot be alleged in a sale by order of the court. La. C.C. art. 814 only refers to an extrajudicial partition that can be rescinded if the co-owner gets less than¾ of the fair market value of his interest.
In the present case, the sheriff's sale is by order of the trial court and is not an extrajudicial partition. The articles on lesion and recision do not apply.
The relator did not support his claim that the minimum bid is too low.

Property Taxes
Jonathan Ainsworth argues that the trial court erred in reimbursing Richard Ainsworth for $5,113.36 paid for the 2001, 2002 and 2003 property taxes on the property in question. The relator maintains that Richard Ainsworth was not entitled to $5,113.36 that he paid in property taxes because he owned one-third of the property so that two-thirds of that amount is all that Richard Ainsworth is entitled.
Necessary steps for the preservation of the property held in indivision may be taken by any of the co-owners acting alone. La. C.C. art. 800.[13] La. C.C. art. *118 801 provides that: "The use and management of the thing held in indivision is determined by agreement of all the co-owners." Without an agreement of the co-owners when a partition is not available, upon petition of an owner, a court may determine the use and management of the property held in indivision under La. C.C. art. 803. The trial court shall order reimbursement due to a co-owner out of the proceeds of the sale under La. C.C.P. art. 4626.[14]
In Sharp v. Zeller, 38 So. 449, 114 La. 549 (1905), the Louisiana Supreme Court stated that a joint owner in possession is accountable for rents, and is entitled to recover money expended for taxes, insurance, and necessary repairs, inuring to the benefit of his co-owners. The Supreme Court stated:
Defendant's first contention is that the judgment of January 2, 1901, decreed that the whole sum of $3,900 be paid by plaintiffs, and not by the community. Taking the decree as a whole, it is evident that it was adjudged that said amount represented the separate claim of Henry Zeller against the community. Hence the expression judgment `against plaintiff' should be construed with reference to the context, and as meaning that the decree was against plaintiffs, as owners in indivision of the community property, and not against them individually. In Sharp v. Zeller, 110 La. [61,] 66, 34 South. [129,] 131 [(La.1902)], this decree was paraphrased as follows: `That Henry Zeller recover of the community the sum of $3,900, amount of his separate claim against it, with legal interest from the date of dissolution.'
Id., 38 So. at 450, 114 La. at 551.
In Sharp v. Zeller, the debt was against the community or the property rather than the co-owners individually. Similarly, in the present case, the debt was owed to the succession or the property rather than the co-owners individually. The entire amount of taxes should be deducted from the proceeds of the property sale so that ultimately each co-owner will share the payment of the taxes equally.
The trial court did not err in allocating reimbursement of the entire amount of the property taxes to Richard from the proceeds of the sale as it was a debt of the bequeathed property.

Recusal
Jonathan Ainsworth argues that the trial judge should be recused pursuant to La. C.C.P. art. 151 B(5),[15] because he can be influenced by those who contribute to his campaign.
*119 Jonathan maintains that he did not contribute to the trial judge's campaign, and Richard and Howard's attorney may have contributed. The relator provided a copy of judicial misconduct complaint attached to his writ application. The relator stated: "In my opinion, [the trial judge] showed favoritism to a politically well-connected law[]firm and denied me due process notice of a hearing thereby. Several judgments were illegally taken against me, even though I was not given any notice whatsoever of the hearing dates...."
The relator's allegation does not show that Richard and Howard's attorney in fact contributed to the trial judge's campaign. This Court reviewed the relator's claims, and has affirmed the rulings of the trial court. The relator provided no showing of the trial court's impropriety in his judgments. The relator provided no supported reason to believe that the trial judge was prejudiced one way or the other in this matter or that the trial judge was biased, prejudiced, or interested in the respondents' cause or attorney to such an extent that the trial judge would be unable to conduct fair and impartial hearings. Because, as stated previously, the property must be partitioned when requested by a co-owner, the trial court has no discretion and is mandated by law to partition and order the sheriff's sale of the co-owners' property.
The relator's claims for the recusal of the trial judge are not justified.
Accordingly, the relator's request to proceed in forma pauperis is denied. The relator's request for a stay order is denied. The judgments of the trial court are affirmed.
WRIT GRANTED; RELIEF DENIED; REQUEST TO PROCEED IN FORMA PAUPERIS DENIED; REQUEST FOR STAY ORDER DENIED; JUDGMENTS AFFIRMED[16]
NOTES
[1] La. C.C. art. 809 states:

Art. 809. Judicial and extrajudicial partition
The mode of partition may be determined by agreement of all the co-owners. In the absence of such an agreement, a co-owner may demand judicial partition.
La. C.C.P. art. 4601 provides:
Art. 4602. Judicial partition
Partition of property may be made either nonjudicially or judicially.
La. C.C.P. art. 4602 states:
Art. 6402. Judicial partition
Partition must be judicial when:
(1) A party is an unrepresented absentee, minor, or mental incompetent; or
(2) All the interested parties cannot agree upon a nonjudicial partition.
[2] La. C.C. art. 807 provides:

Art. 807. Right to partition; exclusion by agreement
No one may be compelled to hold a thing in indivision with another unless the contrary has been provided by law or juridical act.
Any co-owner has a right to demand parition of a thing held in indivision. Partition may be excluded by agreement for up to fifteen years, or for such other period as provided in R.S. 9:1702 or other specific law.
[3] La. C.C.P. art. 1312 states:

Art. 1312. Service of pleadings subsequent to petition; exceptions
Except as otherwise provided in the second paragraph hereof, every pleading subsequent to the original petition shall be served on the adverse party as provided by Article 1313 or 1314, which ever is applicable.
No service on the adverse party need be made of a motion or petition for an appeal, of a petition for the examination of a judgment debtor, of a petition for the issuance of garnishment interrogatories in the execution of a final judgment, or of any pleading not required by law to be in writing.
La. C.C.P. art. 1313 provides:
Art. 1313. Service by mail, delivery, or facsimile
A. Except as otherwise provided by law, every pleading subsequent to the original petition, and every pleading which under an express provision of law may be served as provided in this Article, may be served either by the sheriff or by:
(1) Mailing a copy thereof to the counsel of record, or if there is no counsel of record, to the adverse party at his last known address, this service being complete upon mailing.
(2) Delivering a copy thereof to the counsel of record, or if there is no counsel of record, to the adverse party.
(3) Delivering a copy thereof to the clerk of court, if there is no counsel of record and the address of the adverse party is not known.
(4) Facsimile transmission of a copy thereof to the counsel of record at his number designated for facsimile transmission, or if there is no counsel of record, to the adverse party at his number designated for facsimile transmission, this service being complete upon receipt of the transmission.
B. When service is made by mail, delivery, or facsimile transmission, the party or counsel making the service shall file in the record a certificate of the manner in which service was made.
C. Notwithstanding Paragraph A of this Article, if a pleading or order sets a court date, then service shall be made by registered or certified mail or as provided in Article 1314. [Emphasis added.]
The Editor's Notes following the above article state in pertinent part:
The 1999 amendment allows all pleadings subsequent to the petition to be served by mail or fax, "except as otherwise provided by law." Some exceptions to the rule are: the reconvention, C.C.P. art. 1063, cross-claim, C.C.P. art. 1072; most interventions, C.C.P. art. 1093; third-party demand, C.C.P. art. 1114; presumably subpoenas, C.C.P. art. 1355 (and C.C.P. arts. 1231-36); rules to show cause, see C.C.P. art. 2594 and C.C.P. art. 1313(C); habeas corpus, C.C.P. art. 3824; mandamus and quo warranto, see C.C.P. arts. 2594 and 1313(C). While the latter three are summary proceedings that are initiated by petition, they might be part of a broader suit and thus be "subsequent" to the original petition.
La. C.C.P. art. 1314 states:
Art. 1314. Same; service by sheriff
A. pleading which is required to be served, but which may not be served under Article 1313, shall be served by the sheriff by either of the following:
(1) Service on the adverse party in any manner permitted under Articles 1231 through 1266.
(2)(a) Personal service on the counsel of record of the adverse party or delivery of a copy of the pleading to the clerk of court, if there is no counsel of record and the address of the adverse party is not known.
(b) Except as otherwise provided in Article 2293, service may not be made on the counsel of record after a final judgment terminating or disposing of all issues litigated has been rendered, the delays for appeal have lapsed, and no timely appeal has been taken.
B. Personal service on a partner or office associate of a counsel of record, in the office of such counsel of record shall constitute valid service under Paragraph A of this Article.
[4] La. C.C.P. art. 2591 provides:

Art. 2591. Proceedings conducted with rapidity
Summary proceedings are those which are conducted with rapidity, within the delays allowed by the court, and without citation and the observance of all the formalities required in ordinary proceedings.
La. C.C. art. 2592 states in pertinent part:
Art. 2592. Use of summary proceedings
Summary proceedings may be used for trial or disposition of the following matters only:
(3) An issue which may be raised properly by an exception, contradictory motion, or rule to show cause;
* * *
(5) The homologation of a judicial partition, of a tableau of distribution or account filed by a legal representative, or of a report submitted by an auditor, accountant, or other expert appointed by the court; and an opposition to any of the forgoing, to the appointment of a legal representative, or to a petition for authority filed by a legal representative. [Emphasis added.]
La. C.C.P. art. 2593 provides:
Art. 2593. Pleadings
A summary proceeding may be commenced by the filing of a contradictory motion or by a rule to show cause, except as otherwise provided by law.
Exceptions to a contradictory motion, rule to show cause, opposition, or petition in a summary proceeding shall be filed prior to the time assigned for, and shall be disposed of on, the trial. An answer is not required, except as otherwise provided by law.
La. C.C.P. art. 2594 states:
Art. 2594. Service of process
Citation and service thereof are not necessary in a summary proceeding. A copy of the contradictory motion, rule to show cause, or other pleading filed by the plaintiff in the proceeding, and of any order of court assigning the date and hour of the trial thereof, shall be served upon the defendant.
La. C.C.P. art. 1201 provides:
Art. 1201. Citation; waiver; delay for service
A. Citation and service thereof are essential in all civil actions except summary and executory proceedings and divorce actions under Civil Code Article 102. Without them all proceedings are absolutely null. [Emphasis added.]
B. The defendant may expressly waive citation and service thereof by any written waiver made part of the record.
C. Service of the citation shall be requested on all named defendants within ninety days of commencement of the action. When a supplemental or amended petition is filed naming any additional defendant, service of citation shall be requested within ninety days of its filing. The defendant may expressly waive the requirements of this Paragraph by any written waiver.
[5] La. C.C.P. art. 2002 A(2) provides:

Art.2002. Annulment for vices of form; time for action
A. A final judgment shall be annulled if it is rendered:
* * *
(2) Against a defendant who has not been served with process as required by law and who has not waived objection to jurisdiction, or against whom a valid judgment by default has not been taken.
[6] La. C.C.P. art. 2004 A states:

Art.2004. Annulment for vices of substance; preemption of action
A. A final judgment obtained by fraud or ill practices may be annulled.
[7] La. C.C.P. art. 4643 states:

Art. 4643. Appointment of attorney for incompetent when interests conflict
In any partition of property, whether in kind or by licitation, and whether judicial or conventional, of which an incompetent is co-owner, and the interests of the incompetent conflict with those of his legal representative, undertutor, or undercurator, as the case my be, the court shall appoint an attorney at law to represent and act for the incompetent in the partition. If two or more incompetent co-owners whose interests conflict have the same legal representative, undertutor, or undercurator, the court shall appoint an attorney at law to represent and act for each of these incompetents in the partition.
For the purposes of the partition, the attorney at law so appointed shall act in lieu of, and has all of the power and authority of, the legal representative, undertutor, or undercurator referred to in the first paragraph hereof. [Emphasis added.]
[8] La. C.C. art. 797 provides:

Art. 797. Ownership in indivision; definition
Ownership of the same thing by two or more persons is ownership in indivision. In the absence of other provisions of law or juridical act, the shares of all co-owners are presumed to be equal.
[9] La. C.C. Art. 802 states:

Art. 802. Right to use the thing
Except as otherwise provided in Article 801, a co-owner is entitled to use the thing held in indivision according to its destination, but he cannot prevent another co-owner from making such use of it. As against third persons, a co-owner has the right to use and enjoy the thing as if he were the sole owner.
[10] La. C.C. art. 811 provides:

Art. 811. Partition by licitation or by private sale
When the thing held in indivision is not susceptible to partition in kind, the court shall decree a partition by licitation or by private sale and the proceeds shall be distributed to co-owners in portion to their shares.
[11] La. C.C. art. 814 states:

Art. 814. Rescission of partition for lesion
An extrajudicial partition may be rescinded on account of lesion if the value of the part received by a co-owner is less by more than one-fourth of the fair market value of the portion he should have received. [Emphasis added.]
[12] La. C.C. art. 2589 provides:

Art. 2589. Rescission for lesion beyond moiety
The sale of an immovable may be rescinded for lesion when the price is less than one half of the fair market value of the immovable. Lesion can be claimed only by the seller and only in sales of corporeal immovables. It cannot be alleged in a sale made by order o the court. [Emphasis added.]
The seller may invoke lesion even if he has renounced the right to claim it.
[13] La. C.C. art. 800 states:

Art. 800. Preservation of the thing
A co-owner may without the concurrence of any other co-owner take necessary steps for the preservation of the thing held in indivision.
[14] La. C.C.P. art. 4626 provides:

Art. 4626. Judgment ordering reimbursement or payment of amounts due co-owner out of proceeds of such sale
A judgment ordering the public sale of property to effect a partition under the provisions of this Chapter shall order, out of the proceeds of such sale:
(1) The reimbursement to a co-owner of the amount proven to be due him for the payment of taxes on the property, and the expenses of preservation thereof; and
(2) The payment to a co-owner of the amount proven to be due him by another co-owner who has received and retained the fruits and revenues of the property. [Emphasis added.]
[15] La. C.C.P. art. 151 B(5) states in pertinent part:

B. A judge of any court, trial or appellate, may be recused when he: ... (5) Is biased, prejudiced, or interested in the cause or its outcome or biased or prejudiced toward or against the parties or the parties' attorneys to such an extent that he would be unable to conduct fair and impartial proceedings.
[16] This opinion was approved by Chief Judge Byrnes prior to his death.