MAX N. TOBIAS, JR., Judge.
11 This case involves a petition for partition of immovable property brought by Leona Thompson (“Thompson”) against her former boyfriend/fiancé[1], Alfred L. Celestain, Sr. (“Celestain”), regarding the house that they purchased together in New Orleans in January 2001. Thompson and Celestain eventually ended their relationship, and Thompson moved out of the house.
On 29 July 2004, Thompson filed a petition to partition the property located at 4624 Eastern Street in New Orleans (“the property”).[2] She alleged that she was the owner of an undivided one-half interest in the house and that the property was not susceptible to division in kind because the property included the land and the house. She prayed for partition by licitation of the *220 immovable property. Along with her petition, she filed a descriptive list of assets and liabilities, listing the movable property in the house, as well as the mortgage on the property and the amount due on a VISA account. Celestain responded to the petition with his own descriptive list of assets and liabilities. His list differed from Thompson’s | ^regarding the value of many items of movable property; the liability for the debt of a VISA credit card; and further assigned ownership for each item of movable property to either himself or Thompson. On 7 December 2004, Celestain filed a motion to set a hearing on the petition to partition the property.
The hearing was set for 29 March 2005. Thompson was the only witness to testify on her behalf.[3] She testified that she and Celestain purchased the house for $110,000.00 and that she tendered a $1,000.00 good faith deposit toward the purchase and an additional $26,462.28 as a down payment. She presented copies of an official check for $1,000.00 made payable to the realtor and an official check made payable to herself for $26,462.28. Thompson testified that after she and Celestain purchased the house, she made twelve or thirteen mortgage payments before she eventually moved out in August 2002. She did not present any cancelled checks to introduce into evidence in support thereof, but testified that she made the mortgage payments by money order and could not document the payments.[4] She further testified that she paid for the installation of new windows at the house, costing her a total of $4,279.00. In conjunction with this testimony, she presented one copy of a money order made payable to the mortgage holder and two receipts for windows from LAS Enterprises.
Thompson also testified that she and Celestain had a VISA credit card account together, and that the balance on the account was $9,000.00. She testified |sthat she and Celestain were both responsible for the charges on the account, and that he had agreed to pay for half of the charges on the account when they ended their relationship. He purportedly made a $5,000.00 payment on the account, but then withdrew $5,000.00 against the account by way of a counter check.
Celestain’s testimony is at odds with Thompson’s in many regards. Celestain testified that Thompson moved out during Mardi Gras 2001, and did not continue to reside there until August 2002 as she maintains. Further, Celestain denied that Thompson made the entire down payment on the property; he asserts that he put down $12,000.00 toward the purchase price. He further testified that he has made almost all of the mortgage payments on the property, and that Thompson made only one before she moved out. In support of his testimony, Celestain presented copies of canceled checks written on his personal checking account to the mortgage company, which totaled $12,453.58, representing fifteen mortgage payments.[5] He *221 also described and documented improvements he made to the property over the years, including replacing, the front door, installing a hot tub, restoring a bathtub, plumbing repairs, and various other acts of maintenance on the property.
Celestain’s son and brother were called to testify on his behalf. His son, Alfred Celestain, Jr., testified that he attended college in Baton Rouge, Louisiana from August 1999 through October 2003, frequently coming home to his father’s house both on weekends and during the week. He testified that Thompson was no longer living at the house as of August 2001, but sometimes came by the house to | ¿shower and change clothes. He testified that Thompson and his father owned a white vehicle together of which Thompson retained possession after the break-up.[6] Celestain’s brother testified that Thompson had ceased living at the property sometime around Mardi Gras in 2001.
The trial court issued judgment on 6 April 2005 and issued detailed reasons for judgment. It awarded Thompson the following credits, totaling $24,042.20: $1,000.00 for the good faith deposit on the house; $13,081.14, representing one-half of the down payment on the property; $682.06 for one mortgage payment on the house; $4,279.00 for windows she had installed at the house; and $5,000.00 for the portion of the VISA credit card bill that Celestain admitted depositing the money to pay, but which he later withdrew from the joint account. The trial court awarded Celestain the following credits, totaling $48,025.60: $13,081.14 (one-half of the down payment); $25,463.60 for mortgage payments from August 2002 through the time of trial; the value of two windows installed at the house, calculated to total $713.17; and home repairs and improvements totaling $8,767.69. The judgment found that Thompson was indebted to Celestain in the amount of $23,983.40, with judicial interest due from the date of demand. It further found that the parties “have agreed to settle the jointly held real property” and conveyed Thompson’s undivided interest in the property to Celestain.
Thompson appeals the judgment of the trial court, assigning six errors. Thompson maintains that the trial court erred in 1) ordering the transfer of Thompson’s interest to Celestain instead of partitioning the property; 2) alternatively, if the transfer order was proper, failing to require Celestain to |sreimburse Thompson for her one-half undivided interest; 3) issuing a money judgment in favor of Celestain with interest accruing “from the date of judicial demand” when there was no judicial demand; 4) holding Celestain and Thompson to different evidentiary standards and burdens of proof; 5) requiring Thompson to reimburse Celestain for costs related to the Jacuzzi, when it was installed over her objections; and 6) failing to give Thompson a credit against maintenance costs to offset the benefit derived by Celestain who enjoyed sole use and occupancy of the house from August 2002 on.
Celestain argues that the parties negotiated extensively to divide the movable property between them, transfer title of the residential immovable property to Celestain, and to compensate Thompson for the value of her interest in the property. What was not intended by the parties, according to Celestain, was to proceed to a partition by licitation. Thus, although Celestain admits that the judgment as rendered by the trial court may be flawed in *222 its computation of damages, he contends that it essentially reflects the will of the parties with regard to the disposition of the immovable property. As we discuss infra, we do not find this argument persuasive or in accordance with Louisiana law.
Under Louisiana law, a person may not be compelled to own property in indivisión with another and may petition a court of competent jurisdiction to partition the property between its owners. La. C.C. art. 807; Ainsworth v. Ainsworth, 03-1626, p. 4 (La.App. 4 Cir. 10/22/03), 860 So.2d 104,109. If the property in question is not divisible in kind, such as a house, it must be partitioned by licitation and put up for sale at public auction. La. C.C. art. 811. The parties may agree, however, to a private sale at any time before the auction is held. La. C.C.P. art. 4607. Once the property is sold, the co-owners are entitled to a portion | (¡of the proceeds equal to their ownership share in the property, and further share according to their ownership interest in the liability for any mortgages or encumbrances on the property. La. C.C. art. 815.
The law does not, however, provide for the result reached by the trial court in this matter. In the absence of an agreement to privately sell the property or other stipulation regarding its ownership and transfer, the trial court was bound as a matter of law to order the property sold at auction with the proceeds to be divided between Thompson and Celestain, taking into account the credits and liabilities each party was entitled to with regard to the property. If, as Celestain argues, the parties intended for him to acquire Thompson’s one-half undivided interest in the property with compensation to her for her interest, they may confect such an agreement prior to public sale. However, the evidence in the record on appeal does not preponderate to show that such an agreement was made, and an agreement to sell property in lieu of partition must be “definite and certain.” Ainsworth v. Ainsworth, 860 So.2d at 109, citing, Walker v. Chapital, 218 La. 663, 50 So.2d 641 (1951). Otherwise, the trial court is bound to follow the Code of Civil Procedure and effect a partition by licitation. Because the trial court failed to follow the procedure outlined in the Code of Civil Procedure, it prematurely determined the amounts of reimbursements owed.[7] Therefore, we vacate the judgment of the trial court and pretermit ruling on the remaining assignments of error.
|7As such, the judgment of the trial court is vacated and this matter is remanded to the trial court to proceed in accordance with law.
VACATED; REMANDED.
MURRAY, J., concurs and assigns reasons.

. There is a disagreement between the parties as to whether they were ever engaged to be married. Because they never married, however, the status of their relationship is of no moment as a matter of law, and they are to be treated merely as two owners in indivisión of the property in question.

. Thompson also requested division of some movable property contained in the house, including furniture and personal items. However, the parties reached an agreement regarding division of the movable property and its partition is not part of this appeal.

. Thompson did not call any additional witnesses, even though several were listed on her witness list submitted prior to trial.

. The trial court noted in its reasons for judgment that she and Celestain maintained a joint checking account during the time they lived together, and questioned why Thompson would have made the payments by money order. Thompson asserts that she still has personal possessions and documents at the house to which Celestain will not allow her access.

.The earliest mortgage payment documented by the evidence presented by Celestain was dated 10 August 2002, which is the month Thompson asserts she moved out. Celestain, like Thompson, presented no cancelled checks detailing any mortgage payments made from January 2001 to July 2002.

. We note that the vehicle is not listed as an item of movable property in dispute between the parties.

. It appears that the trial court proceeded to partition the property according to La. R.S. 9:2801, et seq. Those provisions of law are inapplicable for they apply to partition of community property, not property owned in indivisión between unmarried individuals. We do, however, recognize that the provisions may by analogy provide guidance to a court as to how to proceed. We further note that the partition should be handled in accordance with La. C.C.P. arts. 4601, et seq., but not La. C.C.P. art. 4621, et seq., which applies only in the case of an absent co-owner.