767 So.2d 715 (2000)
Margarette McCARROLL
v.
Donald P. McCARROLL.
No. 99 CA 0046.
Court of Appeal of Louisiana, First Circuit.
May 12, 2000.
Rehearing Denied July 7, 2000.
Writ Denied November 3, 2000.
*717 Lila Tritico Hogan, Hammond, Counsel for PlaintiffAppellantMargarette McCarroll.
Reginald J. McIntyre, Hammond, Counsel for DefendantAppelleeDonald P. McCarroll.
Before: LeBLANC, GONZALES, FITZSIMMONS, WEIMER, and PETTIGREW, JJ.
WEIMER, J.
Margarette McCarroll appeals from a trial court partition of community property between herself and her former spouse, Donald McCarroll. After a thorough review of the record, we amend the judgment in part, and, as amended, affirm.

PRIOR PROCEEDINGS
After proceeding up and down through the judicial process, this case is before us for a second time on the merits. The Louisiana Supreme Court reversed the trial court's initial judgment of partition of the community. McCarroll v. McCarroll, 96-2700 (La.10/21/97), 701 So.2d 1280. In an extensive opinion, the supreme court held that an agreement between the parties (the extrajudicial partition) regarding Mrs. McCarroll's exclusive use of the family residence did not extend beyond 1984. Mrs. McCarroll's occupancy of the family home after that time was deemed to be "precarious, at best, and clearly not contemplated by the parties in 1979." McCarroll, 96-2700 at 14, 701 So.2d at 1287. Mrs. McCarroll received $5,000.00 cash, movables valued at $2,000.00, and rental value for use of the family residence for approximately 70 months. Because the rental value should not have been assessed to her retroactively in the computation for partition of the community, the supreme court found the extrajudicial partition lesionary. See LSA-R.S. 9:374(C); McCarroll, 96-2700 at 22, 701 So.2d at 1291.
The matter was remanded to the trial court with directions to: make a determination of the exact date on which the last McCarroll child reached the age of 18 in 1984; make "definite findings of fact with respect to the value of some elements of *718 the community"; and judicially partition the community property. Id. On remand, the trial court partitioned the community property by awarding Mrs. McCarroll the family home, its contents, and the sum of $10,043.47. She was, moreover, ordered to pay all costs.

ASSIGNMENTS OF ERROR
Mrs. McCarroll assigns the following as errors by the trial court:
1) The failure to partition the Chevron stock in kind and the valuation of the Chevron stock as of October 25, 1994, the date of the original trial;
2) The failure to reimburse her for one-half of Donald McCarroll's withdrawals from the community portion of the invested co-owned assets;
3) The failure to reimburse her for one-half of the growth on the community portion of the invested co-owned assets from July 1994;
4) The grant of a rental claim for Donald McCarroll beyond the date ordered by the Louisiana Supreme Court;
5) The alteration of the initial date of use and occupancy of the family home by Mrs. McCarroll;
6) The valuation of the used household items at $10,306.25;
7) The use of the year, 1955, instead of 1960, as the commencement date for Mr. McCarroll's participation in the Chevron Retirement Plan;
8) The credit to Mr. McCarroll in the sum of $8,968.91 as loans to Mrs. McCarroll;
9) The reimbursement to Mr. McCarroll of house note payments;
10) The assessment of all costs to Mrs. McCarroll; and
11) The court's method of partition of the community property.

APPORTIONMENT OF CHEVRON STOCK
When Mr. McCarroll retired in 1990, he received 3,710 shares of Chevron stock as part of his profit sharing/savings plan. On appeal, Mrs. McCarroll agrees that the trial court correctly determined that 17.3 percent or 641.83 shares were community property. After 1990, there was a stock split, doubling the community shares to 1283.66. The trial court credited Mrs. McCarroll's share of the total community with one half of the value of the community shares as of the October 25, 1994, which was the date of the original trial. Mrs. McCarroll asserts that the trial court erred in its failure to divide the Chevron stock in kind between the parties. We agree.
It is well settled that a trial court has broad discretion in adjudicating issues raised in a proceeding for partition of the community regime. Smith v. Smith, 95-0913, p. 10 (La.App. 1 Cir. 12/20/96), 685 So.2d 649, 655. Nevertheless, the decision of the trial judge to value the Chevron stock as of the original October 25, 1994 trial date and to fail to divide the Chevron stock in kind was an abuse of discretion. Generally, the logical and equitable manner in which to divide an asset such as publicly traded stock, which fluctuates in value, is to divide it in kind. An inkind partition avoids valuation disagreements and results in both parties sharing in the variances of the market.
Louisiana Revised Statute 9:2801[1] provides a procedure for the partition of community *719 property. In Cheramie v. Bone, 444 So.2d 200, 202 (La.App. 1 Cir.1983), the court articulated a preference for an in-kind partition of certain assets, stating:
La. R.S. 9:2801(4)[2] establishes an order of priorities to be considered by the trial court in allocating the assets and liabilities of the parties.... In Spaht, Matrimonial Regimes, 43 La.L.Rev. 513, 515-516 (1982) appears the following:
The court then shall divide the community assets and liabilities so that each spouse receives property of equal net value. The language is identical to that of article 2369.1, which was repealed. The first priority in dividing the assets and liabilities is a partition in kind, evidenced by the following language: "The court shall allocate or assign to the respective spouses all of the community assets and liabilities."
The court subsequently indicated there was no evidence in the record to show why U.S. Savings Bonds and cash could not be divided in kind. Cheramie v. Bone, 444 So.2d at 203.
In Brown v. Brown, 28,441, p. 20 (La.App. 2 Cir. 8/21/96), 680 So.2d 1203, 1215, writs denied, 96-2518, 96-2562 (12/6/96), 684 So.2d 939, 940, the court stated:
While recognizing the broad discretion of the trial court to divide the community property, we find that under the facts of this case when a community asset is easily divisible in kind, when the entire allocation of the assets to one spouse is not warranted under La. R.S. 9:2801(4)(c) for special circumstances, and when there is evidence that a significant increase or decrease in the value of the asset is imminent, the trial court should attempt to divide the asset in kind to avoid the disputed issue of valuation. However, we recognize that under the process set forth in La. R.S. 9:2801(4), whereby the court is charged to divide the property "so that each spouse receives property of an equal net value" and so as to minimize, if possible, the need for payment of an "equalizing sum of money" by one spouse, the partition of assets such as the Gin stock, which are readily divisible in kind, cannot always be made.[3]
We agree with this statement. While the trial court should be afforded flexibility to fashion an equitable resolution in dividing the community, an in-kind partition will generally achieve this purpose unless an asset cannot be divided in kind or an in-kind division results in an inequitable division or special circumstances exist which dictate an asset should be allocated to one spouse.
In this matter, the case has remained embroiled in the judicial system for a substantial period of time. In pretrial statements, following remand by the supreme court, Mrs. McCarroll proposed an in-kind partition of the Chevron stock and Mr. McCarroll proposed the stock be valued at "today's market value." Apparently, neither party anticipated using the value of the stock as of the original October 25, 1994 trial date; nevertheless, that is the value used by the trial court.[4] We further note there are other assets that can be used to fashion an equitable division of the community if this stock is divided in kind. Given the circumstances of this case, we *720 believe the trial judge abused his discretion by failing to consider the nature of the asset and other circumstances that should have been deemed relevant and which, if considered, would have led the court to divide the stock in kind. The relevant circumstances in this matter include the length of time this case has been involved in litigation, the vagaries of the stock market which both parties share with an in-kind partition, avoiding inequities resulting from the stock values changing between trial and final resolution. Additionally, there was no evidence of special circumstances to indicate the stock should be awarded to one spouse over the other. In this case, the Chevron stock should be divided in kind. Thus, this court will order that Mrs. McCarroll receive 641.83 shares of the Chevron stock.

COMMENCEMENT DATE FOR DONALD MCCARROLL'S PARTICIPATION IN THE CHEVRON RETIREMENT PLAN
To determine Mrs. McCarroll's interest in Mr. McCarroll's pension, the trial court applied the "Sims" formula, an equation jurisprudentially established in the case that bears its name, Sims v. Sims, 358 So.2d 919 (La.1978). The Sims formula involves a fraction produced by the length of time a spouse participates in a pension plan during the marriage over (divided by) the total period of time worked toward earning that pension.
Mrs. McCarroll asserts that the community interest should have been 54 percent of the pension benefits, rather than the 52.2 percent declared by the court. Specifically, she contests the court's utilization of the total years of Mr. McCarroll's employment in the equation instead of the years in which he actually participated in the pension plan. She is correct.
Mr. McCarroll was not eligible to begin participation in the Chevron retirement plan until he reached 25 years of age; however, the court factored into the equation that time period when he was employed prior to reaching the age of 25 years. In Bailey v. Bailey, 97-1178, pp. 6-7 (La.2/6/98), 708 So.2d 354, 357, alluding to its prior decisions in T.L. James & Co., Inc. v. Montgomery, 332 So.2d 834 (La.1975) and Sims, the supreme court held the period of "creditable service" by an employee in a pension or retirement plan is the period of time which determines the portion attributable to the community. See also, Alford v. Alford, 94-1464, p. 6 (La.App. 3 Cir. 4/5/95), 653 So.2d 133, 136 (proof of total time of employment is insufficient for calculation of the community portion).
The years that Mr. McCarroll worked for Chevron prior to attaining 25 years of age did not affect his eligibility or status in the retirement plan; it was not "creditable service" which could be considered a factor in his right to retirement funds. As such, the trial court erred in its calculation of the community portion of the plan when it included in the Sims equation the five years prior to Mr. McCarroll's twenty-fifth birthday. Mrs. McCarroll is correct in her assertion that she is entitled to half of 54 percent of the retirement proceeds. The record shows that when he retired, Mr. McCarroll elected to receive a lump sum in cash of $84,658.22, instead of drawing periodic retirement benefits. Therefore, the community portion is not 52.2 percent of that amount, but 54 percent or $45,715.44.

COMMUNITY PROPERTY GROWTH, INTEREST AND DIVIDENDS

Paine Webber Withdrawals
Mrs. McCarroll assigns as error the court's failure to award her reimbursement of one-half of the sums that Mr. McCarroll withdrew from the community portion of invested co-owned assets. At trial Mr. McCarroll testified that he had been receiving $1,832.74 per month, since January 1992, from investments in a Paine *721 Webber account.[5] Prior to the October 1994 trial on the merits of the partition of the community, Mr. McCarroll received the sum of $60,480.42 ($1,832.74 × 33 months) in stock growth withdrawals, 54 percent of which was community property. The community portion of the withdrawals from the Paine Webber investments amounts to $32,659.43, of which Mrs. McCarroll would be entitled to one half, or $16,329.72. The trial court's rejection of this claim was erroneous.

Interest and Dividends:
The trial court found for a fact that the interest and dividends received by Mr. McCarroll from his investments of his Chevron retirement cash and profit-sharing plan shares amounted to $7,610.19 in 1994, the date of the trial of the partition of community property. Mrs. McCarroll asserts that she is entitled to reimbursement for the continued growth values of the investments subsequent to the time of the partition of the community property in 1994. We disagree. The parties did not submit any new evidence in 1998, when the case was remanded to the trial court. Therefore, there is no evidentiary basis for making an award for a continued growth factor as Mrs. McCarroll argues. The trial court correctly awarded reimbursement up to the date of the trial.
We do, however, agree with Mrs. McCarroll that the trial court's tabulation of the community portion by using a Sims factor of 52.2 percent is in error. The community portion of the interest should be obtained by multiplying the growth amount of $7,610.19 by a Sims factor of 54 percent to result in the community portion of $4,109.50, of which Mrs. McCarroll would be entitled to one half, or $2,054.75.

RENTAL VALUE OF HOME
The Louisiana Supreme Court remanded the case to the trial court to ascertain the date that the McCarrolls' youngest child reached the age of 18 and to, thereafter, judicially partition the community property. The parties stipulated that the daughter, Allison McCarroll, reached 18 years of age on June 4, 1984.
In its reasons for judgment on remand, the trial court noted that it had made a mathematical error in its original judgment when the court indicated that Mrs. McCarroll had possessed the family home from January 1980. The trial court pointed out that, in fact, it had reached the factual conclusion that Mrs. McCarroll was responsible to reimburse Mr. McCarroll for her possession of the home from January 1979, until June 1984, or a period of 65 months. One half of the rental rate of $425.00 is $212.50, which when multiplied by 65 results in a rent reimbursement of $13,812.50.
The first issue that we must resolve is the propriety of the trial court's correction and clarification of the date on which Mrs. McCarroll began her possession of the family home. In its reasons for judgment following the remand, the trial court pointed out that it had previously rendered two irreconcilable factual conclusions. It had indicated that Mrs. McCarroll had occupied the family home for a period of 190 months, which would necessitate Mrs. McCarroll's commencement of occupancy in January 1979. However, at a later point in its reasons, the court stated that the "plaintiff occupied the house beginning in January 1980." Given the inherent factual discrepancy by the trial court, we do not find that it exceeded its jurisdictional authority, on remand, to clarify its factual determination. In this regard, we note that the supreme court recognized the trial court's factual determination, and it even made a reference to the 190-month occupancy, which could only have been applicable if it commenced *722 in January 1979. McCarroll, 96-2700 at 7, 701 So.2d at 1287. Accordingly, the trial court did not err in its conclusion that Mrs. McCarroll owed rent reimbursement for a period of five years and five months, or the sum of $13,812.50.[6]
Thereafter, in reasons for judgment, the trial court explained an award for rental reimbursement in addition to the reimbursement owed to Mr. McCarroll through June, 1984 (when their daughter became eighteen years old). Based on Mr. McCarroll's allegation in a motion to traverse the descriptive list of Mrs. McCarroll, in which he sought one-half of the rental value since January, 1980, the trial court found that Mrs. McCarroll owed rent to Mr. McCarroll from September 4, 1994, until September 18, 1998, when the partition was effected.
In its opinion remanding this case, the Louisiana Supreme Court analogized the ownership in indivision by former spouses after the community property regime has been terminated to the principles of co-ownership. Citing its prior reasoning in Juneau v. Laborde, 228 La. 410, 82 So.2d 693 (1955), the court recognized that a co-owner in exclusive possession could be liable for rent, "but only beginning on the date another co-owner has demanded occupancy and has been refused." (Italics in original.) McCarroll, 96-2700 at 19-20, 701 So.2d at 1290. The court pointed out that in situations of spousal dispute regarding occupancy and rent of the family home, the proper and necessary procedure is a contradictory proceeding wherein the trial court has the opportunity to weigh the arguments of both spouses on the issue of rent at that time. See LSA-C.C. art. 105; LSA-R.S. 9:374. Finally, the supreme court noted that public policy weighs heavily against retroactively granting an award of rent, due to the extreme prejudice to the occupying spouse. See LSA-R.S. 9:374(C); McCarroll, 96-2700 at 20, 701 So.2d at 1290.
In the instant case, the agreement allowing Mrs. McCarroll the exclusive use of the family residence did not extend beyond their youngest child's eighteenth birthday, June 1984. Mr. McCarroll did not, thereafter, petition the court for a hearing relative to occupancy and a rental determination pending the judicial partition. The position of the Louisiana Supreme Court, as pronounced in this case, is that "a spouse who is awarded the use and occupancy of the marital home pending the judicial partition, shall not be liable to the other spouse for rental payments on the home unless ordered to pay by the trial court at the time of the award of use and occupancy." McCarroll v. McCarroll, 96-2700 at 16-17, 701 So.2d at 1288, quoting Wochomurka v. Wochomurka, 552 So.2d 405, 406 (La.App. 1 Cir.1989) (emphasis in original). Accordingly, the trial court committed manifest error in its inclusion of additional reimbursement of rental payments by Mrs. McCarroll to Mr. McCarroll for the period between September 1994 and September 1998. Its assessment against Mrs. McCarroll of an additional $10,306.25 is error.

VALUE OF HOUSEHOLD ITEMS
On remand, neither party offered any evidence of a change in the value of contested items of furniture and a refrigerator between the October 25, 1994 trial and the 1998 reconsideration. Mr. McCarroll had suggested that the limits of $22,000.00 of the homeowner's insurance policy in 1979 should be applied as the monetary value as of the time of the 1994 trial.[7] Mrs. McCarroll's oral testimony concerning prices paid at the original purchases, each occurring over twenty *723 years or more before trial, presented the court with a composite original price of between $2,075.00 and $2,850.00. The trial court selected a figure midpoint between the parties' figures and assigned a current collective value to the furniture of $10,643.50.
A trial court can, but is not required to, accept a party's valuation in testimony of assets or debts at face value. Hawes v. Hawes, 94-1088, p. 7 (La.App. 1 Cir. 4/7/95), 655 So.2d 357, 362, writ denied, 95-1904 (La.11/3/95), 661 So.2d 1388; Kaplan v. Kaplan, 522 So.2d 1344, 1347 (La.App. 2 Cir.1988). The evidence must, nevertheless, support the valuation assigned by the trial court. Breaux v. Breaux, 555 So.2d 1001, 1006 (La.App. 3 Cir.1990). Here, the valuation ascribed by the trial court is unreasonable. The court abused its discretion in use of the insurance policy valuation because of the substantial passage of time and the inability to determine which items were covered by the policy.
The items under consideration included a refrigerator (circa 1970s), two bedroom sets (circa 1960s), coffee tables (circa 1970s) and a dinette set (circa mid-1960s). There is no assertion, or evidence, of any unique or antique value for these items. The trial court even took judicial cognizance that used furniture generally depreciates in value, unless it is demonstrated to be an antique. Thus, the trial court should not have viewed these items as anything other than old and used. We are presented with no evidence of the value of these items at the time of the partition; however, it is unquestionable that the value depreciated. Because each party was equally deficient in presenting proof, we will discount the items 50 percent from the original value. Accordingly, the value is amended to $1,425.00.

REIMBURSEMENT CLAIM
The issue presented by Mrs. McCarroll in this assignment is whether the payments of alleged loans from the separate property of Mr. McCarroll to Mrs. McCarroll, after they were divorced, should have been included in the partition of community property at the trial in October 1994.[8] Mr. McCarroll introduced for the first time, shortly prior to the October 1994 trial, a demand for repayment of numerous checks totaling $8,968.91. Mrs. McCarroll disputed Mr. McCarroll's characterizations of each of the checks, testifying that most were either her ex-husband's portion of joint purchases or reimbursements to her. Her refutation to Mr. McCarroll's demand was significantly more detailed than his in globo claim; however, the judge made the credibility determination that all the payments were either loans or advances to Mrs. McCarroll.
Reasonable evaluations of credibility determinations and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony. Stobart v. State, Department of Transportation and Development, 617 So.2d 880, 882 (La.1993).
We find no merit in Mrs. McCarroll's assertion on appeal that Mr. McCarroll was precluded from asserting his right to reimbursement for these amount in his October 20, 1994 traversal of her sworn descriptive list. Nor do we find merit in her argument on appeal that prescription bars a portion of the reimbursement claim. Mr. McCarroll's claim for reimbursement entails numerous individual monetary amounts that were made after the termination of the community property regime. The trial court did not specify which amounts were loans and which amounts were advances. Because the community *724 property had not been separated when Mr. McCarroll paid these amounts to Mrs. McCarroll, we cannot say that the trial judge committed manifest error in concluding these amounts were advances made to Mrs. McCarroll from her undivided half of the community. There is no merit to Mrs. McCarroll's claim that these "loans" are prescribed.

HOUSE NOTES REIMBURSEMENT
The trial court credited Mr. McCarroll with payment of $1,700.00 to reduce the house note on the family home.[9] The evidence of recorded payments to Pontchatoula Homestead Association reveals payments of $68.00 per month from August 1979 through April 1984. The recorded data does not, however, indicate from whom the payments were forthcoming. Mrs. McCarroll testified that she assumed the monthly payments when she occupied the house.
In reasons for judgment following the October 25, 1994 trial, the court made the factual conclusion that Mrs. McCarroll had resumed occupation of the premises as of January 1979. This court has been, however, unable to find documentation in the presented evidence supportive of mortgage payments for twenty-five months by Mr. McCarroll prior to January 1979. Moreover, there is no reference by Mr. McCarroll in the sworn descriptive list, or throughout the record, to funds purportedly paid by him to reduce the mortgage on the community property at any period of time. In the absence of any indicia of supportive evidence documenting or describing the particular payments, the trial court's conclusion that Mr. McCarroll is entitled to reimbursement for $850.00 is manifestly erroneous or clearly wrong. Stobart, 617 So.2d at 882-883.

PARTITION BY COURT
Applying this court's analysis to the community property partition, it is revised in the following manner. The community portion of the Chevron stock is divided in kind, with 641.83 shares going to Mrs. McCarroll for her half of that community asset. The family home, Albany property, and profit-sharing stock interest retain their values assigned by the trial court. The community property values are assigned as follows:

 Assets assigned to Mr. McCarroll:
 Albany property: 42,500.00
 Retirement lump sum: 45,715.44
 Mr. McCarroll's total: 88,215.44
 Assets assigned to Mrs. McCarroll:
 Family home: 52,500.00
 Contents of home: 1,425.00
 Mrs. McCarroll's total: 53,925.00
 Difference between totals: (88,215.4453,925.00) 34,290.44
 Thus, Mr. McCarroll must pay from his community portion the sum of $17,145.22 to Mrs.
McCarroll to equalize the portions.
 As to the reimbursements:
 Mr. McCarroll owes to Mrs. McCarroll:
 One half of the growth funds withdrawals: 16,329.72
 One half of the community portion of interest/dividends: 2,054.75
 Trial court's award of reimbursement: 7,623.43
 Total reimbursement due Mrs. McCarroll: 26,007.90
 Mrs. McCarroll owes to Mr. McCarroll:
 Rent of family home: 13,812.50
 Repayment of advances: 8,968.91
 Total reimbursement due Mr. McCarroll: 22,781.41
 Net reimbursement due Mrs. McCarroll: (26,007.9022,781.41) $ 3,226.49

*725 Therefore, Mr. McCarroll owes Mrs. McCarroll $17,145.22 to equalize the community portions and a net figure of $3,226.49 for reimbursements, for a total of $20,371.71.

CONCLUSION
Accordingly, we affirm the September 30, 1998 judgment of the trial court decreeing that Margarette McCarroll receive full ownership of the family home and its contents. We amend the judgment to provide that Margarette McCarroll receive title to 641.83 shares of Chevron stock from the Payne Webber account; to provide that Donald McCarroll receive full ownership of the Albany property; to provide that Donald McCarroll pay to Margarette McCarroll the sum of $20,371.71. If this amount is not paid to Mrs. McCarroll by Mr. McCarroll within 30 days of the finality of this judgment, Mr. McCarroll is ordered to pay this amount from the Paine Webber account. The parties shall share all court costs equally.
JUDGMENT AMENDED, AND AS AMENDED, AFFIRMED.
FITZSIMMONS, J., dissents in part, and assigns reasons.
PETTIGREW, J., dissents, joins and adopts Judge FITZSIMMONS dissent.
FITZSIMMONS, Judge, dissenting in part, with reasons.
I respectfully dissent from that portion of the decision that reverses the trial court's award to Donald McCarroll of the entirety of the shares of Chevron stock that he received when he retired in 1990. The issue is whether the statutory procedure necessitates dividing a divisible asset in kind, or whether it is within the prerogative of the judge to give the entirety of the asset to one party. The provisions of La. C.C.P. art. 4606 generally address partition in kind as follows: "Except as otherwise provided by law, or unless the property is indivisible by nature or cannot conveniently be divided, the court shall order the partition to be made in kind."
In matters involving the partition of community property, the trial court is, however, required to follow statutory procedure. McElwee v. McElwee, 93-1010, p. 4 (La.App. 1st Cir.8/17/94), 649 So.2d 975, 977. Louisiana revised statute 9:2801(4) contains specific language directing the court, in relevant part, as follows:
(a) The court shall value the assets as of the time of trial on the merits, determine the liabilities, and adjudicate the claims of the parties.
b) The court shall divide the community assets and liabilities so that each spouse receives property of an equal net value.
c) The court shall allocate or assign to the respective spouses all of the community assets and liabilities. In allocating assets and liabilities, the court may divide a particular asset or liability equally or unequally or may allocate it in its entirety to one of the spouses. The court shall consider the nature and source of the asset or liability, the economic condition of each spouse, and any other circumstances that the court deems relevant. (Underscoring added)
Although the provisions of La. C.C.P. art. 4606 generally favor partition in kind, La. R.S. 9:2801 specifically governs community property law. The directives established pursuant to La. R.S. 9:2801(4) expressly grant the court the discretion to "divide a particular asset or liability equally or unequally or [the court] may allocate it in its entirety to one of the spouses." The underlying criterion is whether each spouse receives property of equal net value. *726 La. R.S. 9:2801(4)(b). This principle is lost in the reasoning of the majority.
In this instance, Mrs. McCarroll received the home and its entire contents. Accordingly, it is respectfully submitted that the court did not abuse its discretion in its failure to divide the Chevron shares of stock in kind. See Barrow v. Barrow, 27,714, pp. 2-3 (La.App. 2nd Cir.2/28/96), 669 So.2d 622, 624-625, writs denied, 96-1057 and 96-1072 (La.6/21/96), 675 So.2d 1080. However, in order to achieve a division "in kind," the majority is compelled to totally redo the trial court's assessment of division of property. We need not go there.
My analysis of the merits again departs from the majority's treatment of Mrs. McCarroll's assertion of prescription for a portion of the reimbursement claim by Mr. McCarroll. Mr. McCarroll's claim for reimbursement entailed numerous individual monetary loans made after the termination of the community property regime. An action on money lent prescribes in three (3) years. La. C.C. art. 3494(3). Mr. McCarroll asserted his claim in October, 1994; therefore, all amounts loaned prior to October, 1991 should have prescribed.
Of the individual checks introduced into evidence as loans, the sum of $8,643.91 had been loaned prior to October, 1991. These loans prescribed. The only loans for which Mrs. McCarroll owes Mr. McCarroll reimbursement are associated with seven checks that were issued after October, 1991. The total sum of those check amounts to $325.00. The sum of reimbursement should be revised accordingly.
NOTES
[1] Louisiana Revised Statute 9:2801(4) contains specific language directing the court, in relevant part, as follows:

(a) The court shall value the assets as of the time of trial on the merits, determine the liabilities, and adjudicate the claims of the parties.
b) The court shall divide the community assets and liabilities so that each spouse receives property of an equal net value.
c) The court shall allocate or assign to the respective spouses all of the community assets and liabilities. In allocating assets and liabilities, the court may divide a particular asset or liability equally or unequally or may allocate it in its entirety to one of the spouses. The court shall consider the nature and source of the asset or liability, the economic condition of each spouse, and any other circumstances that the court deems relevant. (Underscoring added.)
[2] See now LSA-R.S. 9:2801(4)(c).
[3] The court went on to make an in-kind partition of certain stock.
[4] Louisiana Revised Statute 9:2801(4)(a) provides the court shall value the assets of the community as of the time of the trial on the merits, determine the liabilities, and adjudicate the claims of the parties.
[5] In 1990, Mr. McCarroll transferred part of the funds from his Chevron stock into a Paine Webber invested assets account. Thereafter, he placed shares of the Chevron stock and $81,893.12 of his retirement funds into his Paine Webber Individual Rollover Account.
[6] $212.50 multiplied by 65 months.
[7] The submitted records of Allstate Insurance Company list a personal property protection coverage limit of $23,500.00. It is impossible to determine if this figure applies to the items at issue because there is no separate listed coverage on the copy of the policy submitted into evidence for individual pieces of furniture.
[8] In reasons for judgment dated May 17, 1994, the trial court stated:

[D]ue to this court's previous order bifurcating the issues of "Recission on Account of Lesion" and the actual partition [if the action for lesion was successful] the Court is of the opinion equity requires reopening the hearing to allow additional evidence to establish values of the entire community rather than a dismissal.
[9] The court found that Donald McCarroll paid 25 house notes at $68.00 for a total of $1,700.00 for which he was entitled to one-half or $850.00.