# STATE OF LOUISIANA

# COURT OF APPEAL

# FIRST CIRCUIT

## 2025 CA 0526

RASHANDA PORTER KYLES

VERSUS

DERRICK WAYNE KYLES

Judgment Rendered: _JAN 0 9 2026_

* * * * *

On Appeal from the Family Court
In and for the Parish of East Baton Rouge
State of Louisiana
Docket No. F222671

Honorable Erika L. Green, Judge Presiding

* * * * * *

| | |
|---|---|
| Heidi M. Vessel<br>Zachary, Louisiana | Counsel for Plaintiff/1st Appellant<br>Rashanda Porter Kyles |
| Lon E. Roberson<br>Baton Rouge, Louisiana | Counsel for Defendant/2nd Appellant<br>Derrick Wayne Kyles |

* * * * * *

**BEFORE: McCLENDON, C.J., GREENE AND STROMBERG, JJ.**

**McCLENDON, C.J.**

Both spouses appeal the trial court's partition of the community property pursuant to LSA-R.S. 9:2801. For the reasons that follow, we vacate in part, reverse in part, amend in part, affirm in part, and remand for further proceedings consistent with this opinion.

## FACTS AND PROCEDURAL HISTORY

Derrick and Rashanda Kyles were married on March 30, 2013. Rashanda filed a petition for divorce and ancillary matters on August 15, 2020. In Rashanda's petition for divorce, she requested that Derrick be granted the exclusive use and possession of the family residence, located at 7502 Hanks Drive, Baton Rouge, Louisiana, and all contents located therein. Rashanda "reserve[d] her right to rental reimbursement and [to] state the amount thereof."

Derrick filed an answer and reconventional demand on November 9, 2020, likewise seeking a divorce and other incidental relief. As petitioner-in-reconvention, Derrick alleged that Rashanda had voluntarily vacated the former family residence, and therefore, he sought exclusive use of the home and the contents therein. Derrick also sought a judicial partition of the community property pursuant to LSA-R.S. 9:2801.

Following a contradictory hearing on December 8, 2020, the trial court rendered an interim judgment granting Derrick the exclusive use and possession of the family residence; reserving Rashanda's right to seek rental reimbursement for Derrick's use of the family residence; and granting each party the exclusive use and possession of their customary vehicles, with each party being responsible for the vehicles' respective mortgage notes and insurance.

The parties were divorced by judgment dated November 24, 2021. By stipulated judgment, the parties resolved issues of custody. Specifically, the parties were awarded joint custody of their two minor children, and Rashanda was designated as the domiciliary parent. However, the parties were unable to reach an agreement as to the partition of community property. Thus, a bench trial was held on June 15, 2023 to partition the community property pursuant to LSA-R.S. 9:2801. The trial court took the matter under advisement and thereafter issued an oral ruling on July 5, 2023. On September 20, 2023,

2

the trial court signed a "Final Community Property Judgment" which provided, in pertinent part:

**Having considered the law, pleadings, evidence and testimony of the witnesses, the Court hereby made the following factual findings:**

The Court finds that[]the [s]ole [immovable] property at issue was identified as 7502 Hanks Drive, Baton Rouge, Louisiana[,] which is deemed the separate property of Derrick Wayne Kyles due to a donation of the lot, valued at $20,000.000 by Mr. Kyles'[]aunt to him as his separate property. Thus, the home which was permanently attached to the lot during the existence of the community property regime between the parties takes on the nature of the land, thereby leaving at issue the increased value of the land.

The Court further finds that[]the multiple indebtedness mortgage which [e]ncumbered the property located at 7502 Hanks Drive, Baton Rouge, Louisiana[,] is a community obligation.

**THUS,** pursuant to the above stated findings, the Court hereby [renders] the following Judgment:

**IT IS HEREBY ORDERED, ADJUDGED[,] and DECREED** that the [immovable] property located at 7502 Hanks Drive, Baton Rouge, Louisiana[,] is the separate property of Derrick Wayne Kyles.

**IT IS FURTHER ORDERED, ADJUDGED[,] and DECREED** that the mortgage secured by the property at 7502 Hanks Drive, Baton Rouge, Louisiana[,] is a community obligation.

**IT IS FURTHER ORDERED, ADJUDGED[,] and DECREED** that Rashanda Porter Kyles is entitled to one half of the increased value of the property located at 7502 Hanks Drive, Baton Rouge, Louisiana.

**IT IS FURTHER ORDERED, ADJUDGED[,] and DECREED** that as of the date of the trial, the improved value of the property located at 7502 Hanks Drive, Baton Rouge, Louisiana is . . . $417,500.00.

**IT IS FURTHER ORDERED, ADJUDGED[,] and DECREED** that utilizing the tax assessor's value of the home in 2016, the court finds that the home was worth $248,930.00 in 2016. Therefore, the court deems the increased value of the lot to be $168,070[.00]. Ms. Kyles is entitled to half of the increased value of the improvement on the lot in the amount of $84,035.00.

**IT IS FURTHER ORDERED, ADJUDGED[,] and DECREED** [that] Mr. Kyles is granted full ownership of the property located at 7502 Hanks Drive and it shall be deemed his separate property.

**IT IS FURTHER ORDERED, ADJUDGED[,] and DECREED** that Ms. Kyles shall be awarded one half the value of the furniture in the possession of Mr. Kyles listed on the detailed descriptive list. The total value of the movables is $34,520.00. Mr. Kyles shall reimburse Ms. Kyles the amount of $17,260.00.

[**IT IS FURTHER ORDERED, ADJUDGED[,] and DECREED**] that the court will not consider the Toyota Solara.

3

**IT IS FURTHER ORDERED, ADJUDGED[,] and DECREED** that Ms. Kyles shall be granted full ownership of the 2020 BMW x5 and she is [solely] responsible for the mortgage thereon.

**IT IS FURTHER ORDERED, ADJUDGED[,] and DECREED** that Mr. Kyles is granted full ownership of the 2013 Chevrolet Van, the 2013 Lexus GS 350, and the 2018 Denali and he is solely responsible for any mortgages or obligations associated with these vehicles.

**IT IS FURTHER ORDERED, ADJUDGED[,] and DECREED** that the court finds that the Denali is valued at $42,654.[00], and the 2013 Chevy Van is valued at $17,011.00.

**IT IS FURTHER ORDERED, ADJUDGED[,] and DECREED** that at the termination of the community, the parties had the following financial accounts: Derrick Kyles[' account] ending in #2662 with $1,611.15[;] both parties['] account ending in 1370 [with a balance of $1,402.60;] Derrick Kyles[' account] ending in 5089 [with a balance of $1,375.49;] Derrick Kyles[' account] ending in 7427 [with a balance of] $872.39. These accounts total $6,582.44. Each party is entitled to one half of the total value of the accounts, in the amount of $3,291.22 each.

**IT IS FURTHER ORDERED, ADJUDGED[,] and DECREED** that there was no evidence of liabilities entered into the record, therefore the liabilities of the parties shall not be considered pursuant to a status conference held to clarify the instant ruling.

**IT IS FURTHER ORDERED, ADJUDGED[,] and DECREED** that that court shall not consider reimbursement claims for moving and storage fees requested by Ms. Kyles.

**IT IS FURTHER ORDERED, ADJUDGED[,] and DECREED** that Ms. Kyles listed attorney's fees in the amount of $8,500.00. Mr. Kyles shall pay one half of the amount listed on the [Detailed Descriptive List].

**IT IS FURTHER ORDERED, ADJUDGED[,] and DECREED** that Ms. Kyles shall not be entitled to rental reimbursement, due to being awarded one half of the increased value of the home.

**IT IS FURTHER ORDERED, ADJUDGED[,] and DECREED** [that] there shall be no reimbursement for appraisal fees to either party.

Following the trial court's September 20, 2023 judgment, Rashanda filed a motion for partial new trial and/or reconsideration. Rashanda argued the trial court erred in its valuation of the 7502 Hanks Drive property; in failing to find she was entitled to reimbursement for one half of the principal of the mortgage payments made during the community on the family residence built on the 7502 Hanks Drive property; and in failing to order Derrick to pay her an equalizing payment for the award of the three vehicles to him.

Derrick opposed Rashanda's motion for new trial and/or reconsideration. Derrick also requested written reasons for judgment pursuant to LSA-C.C.P. art. 1917.

4

On November 14, 2023, the trial court signed written reasons for judgment regarding the September 20, 2023 "Final Community Property Judgment" and heard Rashanda's motion for new trial and/or reconsideration. On March 7, 2024, the trial court signed a written judgment on Rashanda's motion.[1] The trial court denied Rashanda's motion seeking a higher valuation of the 7502 Hanks Drive property and reimbursement of one half of the mortgage principal payments, but granted the motion as to Rashanda's request for an equalizing payment. On March 8, 2024,[2] the trial court signed a judgment which provided, in pertinent part:

> **IT IS ORDERED** . . . that **RASHANDA PORTER KYLES** shall be awarded an equalizing payment of $32,740.00 for the award of the community vehicles to **DERRICK WAYNE KYLES**. This shall be paid by **DERRICK WAYNE KYLES** in two installments[.] [T]he first shall be paid by September 15, 2024, and the second and final payment shall be due on March 15, 2025.

The parties now separately appeal both the September 20, 2023 judgment partitioning the community property assets and liabilities and the March 8, 2024 judgment awarding an equalizing payment in favor of Rashanda.

## ASSIGNMENTS OF ERROR

On appeal, Derrick raises three assignments of error. His first assignment of error challenges that portion of the September 20, 2023 judgment finding that Rashanda is entitled to one half of the increased value of the 7502 Hanks Drive property. His third assignment of error contends the trial court erred in not offsetting the parties' competing reimbursement claims regarding the family residence. Derrick's second assignment of

---

[1] The March 7, 2024 judgment on Rashanda's motion for new trial and/or reconsideration provided, in pertinent part:

> **IT IS FURTHER ORDERED, ADJUDGED[,] and DECREED** that the Motion for Rehearing and/or Reconsideration filed by Rashanda Porter Kyles is **DENIED** in part, and **GRANTED** in part with the Court not reconsidering the issue of solely relying on the Appraisal of the court appointed appraiser, Val Lowery; but rather considering Mr. Kyles' appraiser and other factors more specifically detailed in the Court's written reasons for judgment.
>
> The Court further refuses to reconsider/rehear the issue of the value of the immovable property and how said value was derived. The Court will[,] however, grant reconsideration of an equalizing payment to Ms. Kyles for the community vehicles awarded to Mr. Kyles. The court will issue an amended judgment to specify the said amount of the equalizing payments to Ms. Kyles.

[2] We note that the trial court signed a judgment that was nearly identical to the March 8, 2024 judgment on March 5, 2024. It is unclear why the trial court signed both judgments. However, both Rashanda and Derrick specifically referenced the March 8, 2024 judgment in their motions to appeal.

5

error argues the trial court erred in failing to award reimbursement for the community's rent-free use of his separate property residence.

In three assignments of error and her appellee brief, Rashanda contends the trial court properly awarded her one half of the increase in value of the 7502 Hanks Drive property, but erred in its valuation of same. In two assignments of error, Rashanda argues the trial court erred in its determinations regarding the community vehicles. Specifically, she asserts the trial court erred in basing its valuation of two of the community vehicles on its *"sua sponte"* research and in failing to consider that the vehicles awarded to Derrick had no proven mortgages. In two assignments of error, Rashanda argues the trial court erred in "in partitioning alleged tax and other liabilities asserted by Mr. Kyles despite there being no tangible or credible evidence thereof" and in ordering that "all remaining liabilities be split, leaving it to the parties to determine what assets the court was speaking about and in what amounts[.]" Finally, in a last assignment of error, Rashanda asserts the trial court erred in "simply dividing equity for all assets and not awarding an equalizing payment for the non possessing party."

## COMMUNITY PROPERTY PARTITION

Louisiana Revised Statutes 9:2801 provides the mandatory procedure by which community property is partitioned when the spouses are unable to agree on a partition. See **Trahan v. Trahan**, 2016-0108 (La.App. 1 Cir. 9/16/16), 203 So.3d 447, 450. Both parties file sworn detailed descriptive lists and either traverse or concur in the inclusion or exclusion of each asset and liability and the valuation contained on the other party's list. LSA-R.S. 9:2801(A)(1) and (2); **Hardy v. Hardy**, 2018-0487 (La.App. 1 Cir. 2/28/19), 273 So.3d 448, 452. Thereafter, the trial court values the community assets, determines the community liabilities, and adjudicates the spouses' claims.[3] LSA-R.S. 9:2801(A)(4)(a). The court also divides and allocates the community assets and liabilities so that each spouse receives property of an equal net value. LSA-R.S. 9:2801(A)(4)(b)

---

[3] Pursuant to LSA-R.S. 9:2801(A)(4)(a), the court is to value community assets "as of the time of the trial on the merits[.]" However, it is well settled that when the parties do not submit evidence of the current value of community assets, the trial court does not err in making its valuations based upon the evidence presented by the parties. **Mabray v. McSherry**, 54,022 (La.App. 2 Cir. 8/11/21), 325 So.3d 1157, 1164, writ denied, 2021-01498 (La. 12/21/21), 329 So.3d 828; see also **Christie v. Christie**, 2021-359 (La.App. 3 Cir. 1/26/22), 333 So.3d 840, 846; **McLaughlin v. McLaughlin**, 2017-645 (La.App. 5 Cir. 5/16/18), 247 So.3d 1105, 1113; **Trahan**, 203 So.3d at 454; **Katner v. Katner**, 2009-0974 (La.App. 4 Cir. 12/23/09), 28 So.3d 566, 570.

6

and (c). If the allocation of assets and liabilities results in an unequal net distribution, the court shall order the payment of an equalizing sum of money. LSA-R.S. 9:2801(A)(4)(d); **Trahan**, 203 So.3d at 451.

## STANDARD OF REVIEW

It is well settled that a trial court has broad discretion in adjudicating issues raised by the partition of the community. The trial court is afforded a great deal of latitude in arriving at an equitable distribution of the assets between the spouses. **Hardy**, 273 So.3d at 453. Factual findings and credibility determinations made in the course of valuing and allocating assets and liabilities in the partition of community property may not be set aside absent manifest error. **Berthelot v. Berthelot**, 2017-1055 (La.App. 1 Cir. 7/18/18), 254 So.3d 800, 806. A trial court can, but is not required to, accept a party's valuation in testimony of assets or debts at face value. The evidence must, nevertheless, support the valuation assigned by the trial court. **McCarroll v. McCarroll**, 1999-0046 (La.App. 1 Cir. 5/12/00), 767 So.2d 715, 723, writ denied, 2000-2370 (La. 11/3/00), 773 So.2d 146. Assets, liabilities, and reimbursements are factual determinations that should not be disturbed absent manifest error or an abuse of discretion. **Hardy**, 273 So.3d at 453 (assets and liabilities); **Pierce v. Pierce**, 2019-0689 (La.App. 1 Cir. 2/21/20), 298 So.3d 902, 911 (reimbursements). However, the allocation or assigning of assets and liabilities in the partition of community property is reviewed under the abuse of discretion standard. **Hardy**, 273 So.3d at 453.

Regarding questions of law, appellate review is simply a review of whether the trial court was legally correct or legally incorrect. The appellate court gives no special weight to the trial court's findings on legal issues. **Boyd v. Boyd**, 2010-1369 (La.App. 1 Cir. 2/11/11), 57 So.3d 1169, 1174. A legal error occurs when a trial court applies incorrect principles of law and such errors are prejudicial. Legal errors are prejudicial when they materially affect the outcome and deprive a party of substantial rights. When such a prejudicial error of law skews the trial court's finding of a material issue of fact and causes it to pretermit other issues, the appellate court is required, if it can, to render judgment on the record by applying the correct law and determining the essential material

facts *de novo.* **Tanana v. Tanana**, 2012-1013 (La.App. 1 Cir. 5/31/13), 140 So.3d 738, 742.

## DISCUSSION

At the outset of this discussion, we note that LSA-R.S. 9:2801 does not require the trial court to include in the judgment the calculations used to determine the final allocation of assets, liabilities, and reimbursements, as long as it is clear from the record that the assets were valued, the liabilities were determined, and the claims were adjudicated. In such circumstances, this court has previously looked to the trial court's oral reasons and spreadsheets the trial court provided to the parties regarding the values and calculations. See **Hoover v. Hoover**, 2010-1245 (La.App. 1 Cir. 3/17/11), 62 So.3d 765, 768. Therefore, we rely on the trial court's written reasons, oral reasons, and spreadsheets as needed. However, where there is a conflict between the judgment and the reasons for judgment, we defer to the judgment, as the judgment controls. See **Benoit v. Benoit**, 2021-0864 (La.App. 1 Cir. 4/4/22), 341 So.3d 719, 725 n.1, writ not considered, 2022-00951 (La. 10/4/22), 347 So.3d 890.

### Reimbursement Claims

On appeal, Derrick contends the trial court erred in awarding Rashanda reimbursement for one half of the increased value of the 7502 Hanks Drive property. Derrick also argues that the trial court erred in failing to offset, reconcile, or "net out" competing reimbursement claims between the parties. We agree, and find that the trial court legally erred on both issues. These legal errors obligate us to render judgment on the record to the extent possible. See **Tanana**, 140 So.3d at 742. However, deficiencies in the record preclude us from determining, on review, whether each spouse received property of an equal net value or if one party was entitled to an equalizing sum. Accordingly, we address those assignments of error pertaining to the claims we are able to decide based on the record before us, and remand the remaining matters to the trial court for the partition of the community property to be properly made in accordance with LSA-R.S. 9:2801 and this opinion. See **Corkern v. Corkern**, 2005-2297 (La.App. 1 Cir. 11/3/06), 950 So.2d 780, 784, writ denied, 2006-2844 (La. 2/2/07), 948 So.2d 1083; **McElwee v. McElwee**, 93-1010 (La.App. 1 Cir. 8/17/94), 649 So.2d 975, 977-978.

The record establishes that Derrick's aunt donated land located at 7502 Hanks Drive, to him as his separate property. The parties initially financed construction of the family residence thereon with a loan from Derrick's father. After the family residence was built, the parties executed a "Multiple Indebtedness Mortgage" on the 7502 Hanks Drive property (the mortgage) on April 28, 2016, to secure a separate promissory note in the amount of $225,000.00.[4] Derrick signed the mortgage as the mortgagee, and Rashanda signed as the "Intervenor Spouse." The parties repaid Derrick's father with the proceeds of the loan secured by the mortgage.

There is no dispute on appeal that the family residence built on the 7502 Hanks Drive property is Derrick's separate property, nor is there any dispute on appeal that the mortgage secured by said property is a community obligation. See LSA-C.C. arts. 2360 and 2361;[5] LSA-C.C. art. 2366; **McGee v. McGee**, 2004-0288 (La.App. 1 Cir. 3/24/05), 905 So.2d 300, 302, writ denied, 2005-1561 (La. 12/16/05), 917 So.2d 1118. Based on these facts, Rashanda's claim for reimbursement relative to the family residence is governed by LSA-C.C. art. 2366, which sets forth the applicable rules for reimbursement when community property is used for the improvement of a spouse's separate property. See **Downey v. Downey**, 2023-0060 (La.App. 1 Cir. 9/15/23), 375 So.3d 987, 992. Louisiana Civil Code article 2366 provides:

> If community property has been used during the existence of the community property regime or former community property has been used thereafter for the acquisition, use, improvement, or benefit of the separate property of a spouse, the other spouse is entitled to reimbursement for one-half of the amount or value that the community property had at the time it was used.
>
> Buildings, other constructions permanently attached to the ground, and plantings made on the separate property of a spouse with community property belong to the owner of the ground. The other spouse is entitled to reimbursement for one-half of the amount or value that the community property had at the time it was used.

This court applied LSA-C.C. art. 2366 to a factually similar case in **McGee**, 905 So.2d 300. The spouses in **McGee** used proceeds from a loan secured by a mortgage on

---

[4] Although the multiple indebtedness mortgage was sometimes referred to as a "refinance" during trial, the "refinance" and the mortgage were the same document.

[5] An obligation incurred by a spouse during the existence of a community property regime for the common interest of the spouses or for the interest of the other spouse is a community obligation. LSA-C.C. art. 2360. Except as provided in LSA-C.C. art. 2363 (defining a separate obligation), all obligations incurred by a spouse during the existence of a community property regime are presumed to be community obligations. LSA-C.C. art. 2361.

the husband's separate property to construct their family residence on said property. **McGee**, 905 So.2d at 301. In assessing the reimbursement owed, the **McGee** court wrote:

> Mr. McGee must reimburse Ms. McGee for the community funds used to build the house on his separate property. The proper measure of the reimbursement is "one-half of the amount or value that the community assets had at the time they were used," not the sums applied to the mortgage over the years. Mr. McGee listed the amount of community funds used in building the house as $69,000.00. Therefore, one-half of the actual value of the community funds used is $34,500.00. It is undisputed that the balance of the loan at the time of the filing of the detailed descriptive lists was $44,082.81. Therefore, as a community obligation, Ms. McGee owed Mr. McGee one-half of the balance of the loan at the time of the partition, or $22,041.40.
>
> After offsetting the amount of Ms. McGee's reimbursement by the amount of her loan obligation, we find that Mr. McGee owes Ms. McGee $12,458.60 for the use of community funds associated with the construction of a house on his separate property. Therefore, we will amend the judgment of the trial court to reduce the reimbursement award from $15,540.86 to $12,458.60.

**McGee**, 905 So.2d at 302-303 (internal citations omitted).

Considering the record before us in light of the plain language of LSA-C.C. art. 2366 and **McGee**, it is clear that the proper measure of Rashanda's reimbursement claim under LSA-C.C. art. 2366 is based on the value the community property had at the time it was used. See LSA-C.C. art. 2366; **McGee**, 905 So.2d at 302. This is true regardless of the value of the separate property at the time of trial or any mortgage payments made during the community.[6] See **Stockton v. Stockton**, 2023-0145 (La.App. 1 Cir. 10/18/23), 377 So.3d 282, 290; **McGee**, 905 So.2d at 302. Thus, the trial court legally erred in finding that Rashanda was entitled to one half of the increase in value of the family residence.[7]

---

[6] Consequently, we pretermit consideration of Rashanda's assignments of error challenging the trial court's valuation of the 7502 Hanks Drive property and find no merit in her arguments seeking reimbursement for mortgage payments made during the marriage.

[7] From its reasons for judgment, it appears that the trial court erroneously applied LSA-C.C. art. 2368, rather than LSA-C.C. art. 2366. Under LSA-C.C. art. 2368, if the separate property of a spouse has increased in value as a result of the uncompensated common labor or industry of the spouses, the other spouse is entitled to be reimbursed from the spouse whose property has increased in value one half of the increase attributed to the common labor. When seeking reimbursement pursuant to LSA-C.C. art. 2368, the claimant spouse has the burden of establishing that (1) the property is separate; (2) the property increased in value; and (3) the increase in value was based on the uncompensated labor of the other spouse. Thereafter, the burden shifts to the other spouse to prove that the increase in value was due to factors other than the uncompensated or undercompensated labor. **Downey**, 375 So.3d at 992-993. Here, Rashanda does not argue that the family residence increased in value as a result of the uncompensated common labor or industry of the spouses, and the record does not reflect that either spouse expended labor or industry in the construction of the family residence. Thus, LSA-C.C. art. 2368 does not apply.

It is also clear that the trial court legally erred in failing to offset the amount of Rashanda's reimbursement by the amount of her share of the mortgage obligation. The September 20, 2023 judgment correctly found that the mortgage was a community obligation. However, while the trial court's written reasons state that Derrick was to "assume" the mortgage, the September 20, 2023 judgment failed to allocate the mortgage to Derrick. We also note that the trial court failed to include the mortgage in its calculations of the net value of property allocated to each spouse, as evidenced by the written reasons. Thus, the trial court legally erred in failing to comply with the mandatory provisions of LSA-R.S. 9:2801(4).

Here, the record is adequate for us to determine on appeal both Rashanda's LSA-C.C. art. 2366 reimbursement claim and the amount by which her mortgage obligation offsets her reimbursement claim. The parties executed a mortgage in the amount of $225,000.00 in order to repay the loan from Derrick's father used to build the family residence. Thus, Derrick must reimburse Rashanda for "one-half of the amount or value that the community property had at the time it was used" to build the family residence on his separate property, or $112,500.00. At trial, Rashanda stipulated that the mortgage balance was $181,403.00. Therefore, Rashanda is liable for one half of the balance of this community obligation, or $90,701.50.

Accordingly, those portions of the September 20, 2023 judgment finding that Rashanda is entitled to one half of the increased value of the 7502 Hanks Drive property, and assessing the value of the 7502 Hanks Drive property, are vacated. The September 20, 2023 judgment is amended to provide that Rashanda is entitled to reimbursement of one half of the value of the community property used to improve the 7502 Hanks Drive property in the amount of $112,500.00 ($225,000.00 ÷ 2 = $112,500.00); that the balance owed on the community mortgage on the 7502 Hanks Drive property is $181,403.00; that responsibility for the community mortgage is allocated to Derrick; and that the $112,500.00 reimbursement Derrick owes to Rashanda must be offset by her one half of the balance of the community mortgage at the time of the partition, or $90,701.50 ($181,403.00 ÷ 2 = $90,701.50).

11

**Community Vehicles**

We next consider Rashanda's arguments on appeal as to values and liabilities associated with the community vehicles. During trial, Rashanda offered into evidence a Kelley Blue Book printout reflecting that the 2013 Lexus GS 350 was worth between $13,594.00 and $15,943.00. She testified that based on Derrick's discovery responses, she believed the balance owed on the Lexus GS 350 was $7,636.56. Derrick traversed the balance in his detailed descriptive list, asserting it was $500.00. The written reasons reflect that the trial court found the Lexus was worth $15,943.00 and found the balance owed on the Lexus was $7,636.56. The September 20, 2023 judgment allocated the Lexus and the associated liability to Derrick.

Regarding the 2020 BMW x5, Rashanda offered into evidence a Kelley Blue Book printout reflecting a value between $39,591.00 and $42,868.00. She testified the balance owed on the BMW was $56,940.81. The written reasons reflect that the trial court valued the BMW at $42,868.00 and found the balance owed thereon was $56,940.81. The September 20, 2023 judgment allocated the BMW and the associated liability to Rashanda.

Regarding the 2018 GMC Sierra, Rashanda testified she believed the GMC Sierra was worth between $30,000.00 and $34,000.00 based on a Kelley Blue Book search but did not offer the Kelley Blue Book document supporting her testimony. She believed the balance owed on the GMC Sierra was $46,000.00, based on Derrick's discovery responses. Neither party offered testimonial or documentary evidence regarding the value or the debt associated with the Chevrolet van. The trial court's written reasons state that because there was no documentary evidence regarding the value of the GMC Sierra and the Chevrolet van, it had, "*sua sponte*," obtained values for these vehicles from Kelley Blue Book of $42,654.00 and $17,011.00, respectively. The written reasons further reflect that the trial court valued the GMC Sierra at $42,654.00 and found the balance owed thereon to be $46,000.00, while it valued the Chevrolet van at $17,011.00 and did not assess a debt associated with the van, presumably due to the lack of evidence. The September 20, 2023 judgment allocated the GMC Sierra, the Chevrolet van, and the liability associated with the GMC Sierra to Derrick.

12

Rashanda contends on appeal that the trial court erred in its valuation of the GMC Sierra and the Chevrolet van. We agree. Evidence not properly and officially offered and introduced cannot be considered, even if it is physically placed in the record. **Landis Construction Co., L.L.C. v. State**, 2015-1167 (La.App. 1 Cir. 2/29/16), 199 So.3d 1, 2-3. Thus, the trial court legally erred in conducting a *"sua sponte"* investigation into the values of the GMC Sierra and the Chevrolet van. Accordingly, we vacate that portion of the September 20, 2023 judgment finding that the GMC Sierra is valued at $42,654.00 and the Chevrolet van is valued at $17,011.00. Further, because the evidence in the record is insufficient to permit us to ascertain a value for these assets,[8] we must vacate that portion of the March 8, 2024 judgment awarding Rashanda an equalizing payment in the amount of $32,740.00, which was based in part on the improper valuations of the vehicles, and remand this case to the trial court to properly determine the values of the GMC Sierra and the Chevrolet van. Finally, as we have vacated that portion of the March 8, 2024 judgment awarding an equalizing payment in favor of Rashanda, we pretermit her assignment of error regarding the equalizing payment.

Rashanda also contends on appeal that the trial court erred in its determination of the liabilities associated with the community vehicles allocated to Derrick, *i.e.*, the GMC Sierra, the Lexus, and the Chevrolet van, because Derrick did not offer documentary proof of said debts. We disagree. Factual findings and credibility determinations made in the course of valuing and allocating assets and liabilities in the partition of community property may not be set aside absent manifest error. **Berthelot**, 254 So.3d at 806. Our review of the record reflects that the only evidence offered regarding the liabilities associated with the community vehicles was Rashanda's testimony. The trial court plainly accepted Rashanda's testimony as credible and determined the debts owed on the BMW, the Lexus, and the GMC Sierra based on her testimony. Accordingly, the trial court's determination of the liabilities associated with the four community vehicles is affirmed.

---

[8] The trial court's reliance on the Kelley Blue Book $42,654.00 valuation of the GMC Sierra clearly establishes that it did not accept Rashanda's testimony valuing the GMC Sierra between $30,000.00 and $34,000.00. It is well-settled that a trier of fact is free to believe in whole or in part the testimony of any witness. See **Berthelot v. Berthelot**, 2017-1055 (La.App. 1 Cir. 7/18/18), 254 So.3d 800, 809; **Pennison v. Carrol**, 2014-1098 (La.App. 1 Cir. 4/24/15), 167 So.3d 1065, 1076, writ denied, 2015-1214 (La. 9/25/15), 178 So.3d 568.

**Family Residence Rental Reimbursement**

Both parties argue on appeal that the trial court erred in failing to grant rental reimbursement for use of the family residence. Derrick argues, without citing any legal authority, that he should be awarded rental reimbursement for the community's rent-free use of his separate property during the marriage. We find no authority supporting this argument, and accordingly find this assignment of error lacks merit.

Rashanda argues the trial court erred in denying her claim for rental reimbursement for Derrick's exclusive use and occupancy of the family residence. We disagree. Pursuant to LSA-R.S. 9:374(C), a spouse who uses and occupies the family residence pending a partition of the community in accordance with LSA-R.S. 9:374(A) or (B) may be liable to the other spouse for rent.[9] **Averill v. Averill**, 2018-0299 (La.App. 1 Cir. 9/21/18), 393 So.3d 351, 353. Louisiana Revised Statutes 9:374(A) and (B) provide, in pertinent part:

> A. When the family residence is the separate property of either spouse, after the filing of a petition for divorce or in conjunction therewith, the spouse who has physical custody or has been awarded temporary custody of the minor children of the marriage may petition for, and a court may award to that spouse, after a contradictory hearing, the use and occupancy of the family residence pending the partition of the community property or one hundred eighty days after termination of the marriage, whichever occurs first. In these cases, the court shall inquire into the relative economic status of the spouses, including both community and separate property, and the needs of the children, and shall award the use and occupancy of the family residence to the spouse in accordance with the best interest of the family. The court shall consider the granting of the occupancy of the family residence in awarding spousal support.
>
> B. When the family residence is community property or is owned by the spouses in indivision, . . . either spouse may petition for, and a court may award to one of the spouses, after a contradictory hearing, the use and occupancy of the family residence . . . pending partition of the property or further order of the court, whichever occurs first. In these cases, the court shall inquire into the relative economic status of the spouses, including both community and separate property, and the needs of the children, if any, and shall award the use and occupancy of the family residence . . . to the spouse in accordance with the best interest of the family. If applicable, the court shall consider the granting of the occupancy of the family residence . . . in awarding spousal support.

Louisiana Revised Statutes 9:374(A) governs when the family residence is the separate property of one spouse, and LSA-R.S. 9:374(B) governs when the family residence is the

---

[9] Louisiana Revised Statute 9:374 was amended in 2022 and again in 2024. Herein, we apply the version in effect at the time of the trial of the community property partition. However, we note that neither the 2022 amendments nor the 2024 amendments resulted in substantive changes that would affect our analysis herein.

community property of the spouses or is owned by the spouses in indivision. As the trial court properly classified the family residence as Derrick's separate property, LSA-R.S. 9:374(B) is inapplicable. Thus, we consider and apply LSA-R.S. 9:374(A).

Under the plain language of LSA-R.S. 9:374(A), when the family residence is the separate property of either spouse, a non-owning spouse who has physical custody of minor children of the marriage may petition for the use and occupancy of a separate property family residence. The non-owning spouse may only be awarded the use and occupancy of the other spouse's separate property while the community property partition is pending, or for one hundred eighty days after termination of the marriage, whichever occurs first. In short, under LSA-R.S. 9:374(A), the spouse with physical custody of the minor children of the marriage may petition for the use and occupancy of the family residence that is the separate property of the other spouse.

Consequently, because Rashanda was designated the domiciliary parent and awarded physical custody of the parties' two minor children, she could have sought the use and occupancy of the family residence under LSA-R.S. 9:374(A), even though it was Derrick's separate property. If Rashanda had been awarded use and occupancy of the family residence, or had exercised the use and occupancy of the family residence in fact, Derrick could have moved for an award of rent for Rashanda's use of his separate property. However, LSA-R.S. 9:374 does not support an award of rent from Derrick to Rashanda for Derrick's use and occupancy of his separate property. When one spouse exercises use and occupancy of his separate property, the other spouse has no ownership in said property, and therefore, has no right to rental reimbursement for same. Accordingly, we affirm that portion of the September 20, 2023 judgment denying Rashanda's claim for rental reimbursement for Derrick's use and occupancy of the former family residence.

**Allocation of Assets and Liabilities**

Rashanda further contends the trial court erred "in partitioning alleged tax and other liabilities asserted by [Derrick] despite there being no tangible or credible evidence thereof" and in ordering that "all remaining liabilities be split, leaving it to the parties to determine what assets the court was speaking about and in what amounts[.]" As set forth

15

above, LSA-R.S. 9:2801 requires that the trial court allocate the community assets and liabilities so that each spouse receives property of an equal net value. LSA-R.S. 9:2801(A)(4)(b) and (c). Further, while LSA-R.S. 9:2801 does not require the trial court to include in the judgment the calculations used to determine the final allocation of assets, liabilities, and reimbursements, it must be clear from the record that the assets were valued, the liabilities were determined, and the claims were adjudicated. See **Hoover**, 62 So.3d at 768.

Here, however, the only community liabilities the trial court allocated by judgment were those associated with the vehicles and Rashanda's attorney fees. The only other reference to community liabilities contained in the September 20, 2023 judgment stated, "there was no evidence of liabilities entered into the record, therefore the liabilities of the parties shall not be considered pursuant to a status conference held to clarify the instant ruling." Further, the trial court's determinations of the liabilities are unclear. For example, the written reasons indicate the trial court denied Derrick's reimbursement claims "for both the family home and the auto insurance" for lack of supporting evidence, but went on to include Derrick's auto insurance reimbursement claim in its calculations. Similarly, the written reasons stated Derrick's reimbursement claims for taxes "are listed in the community liabilities but there was no evidence or testimony indicating [Derrick] paid off those liabilities." Nevertheless, the tax reimbursement claims are included in the trial court's calculations, together with the uncontested community liabilities.

As discussed herein, a trial court's final allocation under LSA-R.S. 9:2801 must show that the assets were valued, the liabilities were determined, and the claims were adjudicated. See **Hoover**, 62 So.3d at 768. Here, the judgment failed to comply with the LSA-R.S. 9:2801 mandate to allocate the community liabilities, and it is unclear from the record that the liabilities were determined and the claims were adjudicated. In light of this legal error, and the necessity of vacating the March 8, 2024 judgment awarding Rashanda an equalizing payment, we remand this matter to the trial court to make an express determination of the community liabilities and to complete the partition as required by LSA-R.S. 9:2801(A).

## CONCLUSION

For the above and foregoing reasons, we render judgment as follows:

Those portions of the September 20, 2023 judgment finding that Rashanda Porter Kyles is entitled to one half of the increased value of the 7502 Hanks Drive property are reversed, and those portions of the September 20, 2023 judgment valuing the 7502 Hanks Drive property are vacated.

The September 20, 2023 judgment is amended to provide that Rashanda Porter Kyles is entitled to reimbursement of one half of the value of the community property at the time it was used to improve the 7502 Hanks Drive property, in the amount of $112,500.00; that the balance owed on the community mortgage on the 7502 Hanks Drive property is $181,403.00; that responsibility for the community mortgage is allocated to Derrick Wayne Kyles; and that the $112,500.00 reimbursement Derrick Wayne Kyles owes to Rashanda Porter Kyles shall be offset by her one half of the balance of the community mortgage at the time of the partition, or $90,701.50.

That portion of the September 20, 2023 judgment finding the GMC Sierra valued at $42,654.00 and the 2013 Chevy van valued at $17,011.00 is vacated.

That portion of the March 8, 2024 judgment awarding Rashanda Porter Kyles an equalizing payment of $32,740.00 is vacated.

In all other respects, the September 20, 2023 and March 8, 2024 judgments are affirmed.

This matter is remanded to the trial court for proper determination of the value of the 2018 GMC Sierra and the 2013 Chevrolet van, determination of the community liabilities, and partition of the community property in accordance with LSA-R.S. 9:2801, including a determination and the timing of an equalizing payment, consistent with the views expressed herein. Costs of this appeal are assessed equally to Rashanda Porter Kyles and Derrick Wayne Kyles.

**VACATED IN PART; REVERSED IN PART; AMENDED IN PART; AFFIRMED IN PART; AND REMANDED.**